COOKE *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 311.  Argued March 20, 1925.—Decided April 13, 1925.

1. On the day following a trial in the District Court in which a verdict had been rendered against his client, in a case in which other necessary proceedings remained pending, and while the court was engaged in trying another case, but during a short recess, an attorney at law addressed a letter, marked "personal," to the District Judge and caused it to be delivered to him at his chambers next the court room, in which the writer not only advised the

judge of the desire of his client·to have another judge try four other cases yet to be heard, and of his own desire to avoid the necessity of filing in those cases an affidavit·of bias under § 21, Judicial Code, by inducing the judge voluntarily to withdraw, but also evinced his heat over the judge's conduct in the case lately tried and characterized it in severe language personally derogatory to the·judge. *Held* that in the latter aspects the letter was contemptuous. P. 532.

2. When a contempt is committed in open court, it may· be adjudged and punished summarily upon the court's own knowledge of the facts, without further proof, without issue or trial, and without hearing an explanation of the motives of the offender. *Ex parte Terry*, 128 U. S. 289. P. 534.

3. But where the contempt was not in open court, though constituting "misbehavior in the presence of the court " within the meaning of Rev. Stats. § 725, due process of law requires charges and that the accused be advised of them and be given a reasonable opportunity to defend or explain, with the assistance of counsel, if requested, and the right to call witnesses in proof of exculpation or extenuation. P. 535.

4. Where the alleged contumacy was committed by sending a letter to the judge in chambers, and eleven days thereafter an order reciting the facts and adjudging contempt was entered and an attachment thereupon issued under which the accused was arrested forthwith and brought before the court and, upon admitting authorship of the letter, was pronounced guilty because of it and of extraneous facts referred to by the judge as in aggravation, and was forthwith punished, without being allowed to secure and consult counsel, prepare his defense and call witnesses, or to make a full personal explanation,—*Held* that the procedure was unfair and oppressive and not due process of law. P. 537.

5. Where conditions do not make it impracticable and the delay will not injure public or private rights, a judge, in a case of contempt consisting of a personal attack upon himself, may properly ask that the matter be heard by a fellow judge. P. 539.

6. In this case, *decided* that the judge who imposed the sentence reversed should invite the Senior Circuit Judge of the Circuit to assign another judge to sit in the second hearing. P. 539.

295 Fed. 292, reversed.

·Clay Cooke and J. L. Walker were each sentenced for thirty days' imprisonment for contempt by the United

States District Court for the Northern District of Texas. The case was taken on error to the Circuit Court of Appeals for the Fifth Circuit, which affirmed the sentence of Cooke and reversed that of Walker. By certiorari, Cooke's sentence was brought here.

Walker was defendant in a series of suits growing out of the bankruptcy of the Walker Grain Company. One of the cases, numbered 984, after a long jury trial resulted in a verdict against Walker of $56,000. The next day, while the court was open and engaged in the trial of another cause, and during a ten minutes' recess for rest and refreshments, Walker, by direction of Cooke, delivered to the District Judge in his chambers, adjoining the court room, and within a few feet of it, a letter marked " Personal ", as follows:

" Fort Worth, Texas, February 15, 1923.
" Hon. James C. Wilson,
     Judge U. S. District Court,
          Fort Worth, Texas.
" Dear Sir:
" In re No. 985, W. W. Wilkinson, Trustee, vs. J. L. Walker; in re No. 986, W. W. Wilkinson, Trustee, vs. Mass. Bonding Company et al.; in re 266, Equity, W. W. Wilkinson, Trustee, vs. J. L. Walker; in re 69, Equity, Southwestern Telegraph & Telephone Co. vs. J. L. Walker, in re No. 1001, in Bankruptcy, Walker Grain Company.

" Referring to the above matters pending in the District Court of the United States for the Northern District of Texas, at Fort Worth, I beg personally, as a lawyer interested in the cause of justice and fairness in the trial of all litigated matters and as a friend of the Judge of this Court to suggest that the only order that I will consent to your Honor's entering in any of the above mentioned matters now pending in Your Honor's Court, is an order certifying Your Honor's disqualification on the ground of prejudice and bias to try said matters.

" You having however proceeded to enter judgment in the petition for review of the action of the Referee on the summary orders against the Farmers' & Mechanics National Bank and J. L. Walker and Mrs. M. M. Walker, you, of course, would have to pass upon the motion for a new trial in those matters, and also having tried 984, W. W. Wilkinson, Trustee, vs. J. L. Walker, you will, of course, have to pass upon the motion for a new trial in said cause.

" I do not like to take the steps necessary to enforce the foregoing disqualification, which to my mind, as a lawyer, and an honest man is apparent.·

" Therefore, in the interest of friendship and in the interest of fairness, I suggest that the only honorable thing for Your Honor to do in the above styled matters, is to note Your Honor's disqualification, or, Your Honor's qualification having been questioned, to exchange places and permit come judge in whom the defendant and counsel feel more confidence to try these particular matters.

" Prior to the trial of cause No. 984, which has just concluded, I had believed that Your Honor was big enough and broad enough to overcome the personal prejudice against the defendant Walker, which I knew to exist, but I find that in this fond hope I was mistaken, also, my client desired the privilege of laying the whole facts before Your Honor in an endeavor to overcome the effect of the slanders that have been filed in Your Honor's Court against him personally and which have been whispered in Your Honor's ears against him, and in proof of which not one scintilla of evidence exists in any record ever made in Your Honor's Court.

" My hopes in this respect having been rudely shattered, I am now appealing purely to Your Honor's dignity as a Judge and sense of fairness as a man to do as in this letter requested, and please indicate to me at the earliest moment Your Honor's pleasure with respect to the mat-

ters herein presented, so that further steps may be avoided.

"With very great respect, I beg to remain,

"Yours most truly,

CLAY COOKE."

Eleven days after this, on the 26th of February, the court directed an order to be entered with a recital of facts concluding as follows:

"Therefore, since the matters of fact set forth herein are within the personal knowledge of the judge of this Court, and since it is the view of this Court that said letter as a whole is an attack upon the honor and integrity of the Court, wherein it charges that the judge of this Court is not big enough and broad enough to truly pass upon matters pending therein, and wherein it charges in effect that the judge of this Court has allowed himself to be improperly approached and influenced and whispered to by interested parties against a litigant in the Court, and since it is the view of this Court that such an act by a litigant and his attorney constitutes misbehavior, and a contempt under the law and that the threats and impertinence and insult in said letter were deliberately and designedly offered with intent to intimidate and improperly influence the Court in matters then pending and soon to be passed upon, and to destroy the independence and impartiality of the Court in these very matters, it is ordered that an attachment immediately issue for the said J. L. Walker and Clay Cooke, and that the Marshal of this Court produce them instanter before this Court to show cause, if any they have, why they should not be punished for contempt."

The marshal arrested the defendants and brought them to court. The following statement shows in substance what then occurred:

"Judge Wilson: At this time I will call the contempt matter against Clay Cooke and J. L. Walker, attachment having been issued for these respondents.

" I have requested Judge J. M. McCormick, of Dallas, to be present and act as a friend of the Court in this proceeding, and have also requested the District Attorney, it being in its nature a criminal matter, to act."

Mr. Clay Cooke said that he had not known of the attachment until that morning, that he would like time to prepare for trial and get witnesses for their defense, that there might be extenuating circumstances which would appeal to the court's sense of fairness and justice in fixing whatever penalty might be imposed and that he had attempted to secure counsel but through illness or absence of those he sought he had failed up to that time.

Judge Wilson intimated that he would not postpone the matter, and said:

" There is just this question involved, and as stated by counsel representing the Court, these facts are within the personal knowledge of this Court. Did you deliver this letter to the Judge of this Court?

" Mr. Clay Cooke: Is your Honor asking me?

" Judge Wilson: I am stating the question—and does that under the law constitute contempt? If you have any defense, you have not suggested any. This Court would be glad to give you ample time to file any pleadings pertinent and secure any evidence that might support or tend to support it, but unless you desire now to state that you have some defense you care to file and present, and indicate what that defense is to this charge, then I shall direct that this proceeding go forward, and you are fully protected, since the higher Courts are open to you to correct any error, even to the Supreme Court, that the Judge of this Court might commit here. Now if you have any defense that is pertinent to this order, state what it is."

Mr. Cooke began to dictate a statement to be filed by him, to the effect that he and Walker believed that they had a good defense, and that the matters of fact stated

in the letter as to the bias and prejudice of the judge were true.

"The Court: That does not constitute any defense.

"Mr. Clay Cooke: I'll state, then something otherwise—

"Judge Wilson: Repeating the insult does not constitute any defense.

"Mr. Clay Cooke: I am not trying to repeat the insult, if your Honor please . . . I am now stating my good faith.

"Judge Wilson: I mean this, that the Court is not permitting it stated—you may if you regard that as proper, you may state it in your bill of exceptions in concluding the record.

"Mr. Clay Cooke: That affiant had heretofore been on friendly relations with said Judge James C. Wilson—

"Judge Wilson: That is a matter that is wholly immaterial here it don't make any difference how friendly.

"Mr. Clay Cooke: I am stating my good faith in writing the letter. And affiant believed in writing said letter that he would relieve the said Judge of the embarrassment of finding the necessary statutory affidavits of disqualification, and if said letter—

"Judge Wilson: Now the Court is not caring anything about your suggesting the disqualification of the Court; that is your right before these important trials, but you did not avail yourself of that privilege. You understood as a lawyer how to proceed in order to suggest the disqualification of the Judge.

"Mr. Clay Cooke: I am going to state why I did not proceed—

"Judge Wilson: That does not constitute any defense to this contempt charge.

"Mr. Clay Cooke: Can I put that in about writing the letter? Can I put that in later?

"Judge Wilson: You may.

" Mr. Clay Cooke: That affiant wrote said letter without any intention on his part of incurring contempt proceedings and without any thought of contempt and believed that said letter would not be so construed. That affiant has the highest regard for this Court as a Judge; that affiant believed in good faith the Court had heard things concerning—"

Then Mr. McCormick, for the court, interposed an objection that there ought not to be an accentuation of the contempt in the letter by a repetition of innuendoes and reflections on the court or by including them in the record.

Mr. Clay Cooke said he had dictated and sent the letter after advising with reputable counsel who had read it and believed it proper. " The letter itself was not carefully read by myself."

" Judge Wilson: I would like to know who said reputable counsel are."

Mr. Clay Cooke said it was his partner, Mr. Dedmon. He said the letter was dictated and was not read by his client, J. L. Walker, that he had not made the contents public and intended it only for the judge's eye to relieve him from embarrassment, that the purpose was most friendly. After repeating a desire for counsel and the investigation as to the law of contempt in its application to this case, Mr. Cooke referred to the statement he had been attempting to dictate and asked that he might make it fuller because of certain interruptions and to put in anything relevant to his defense.

" You may add—I have not heard any defense suggested here yet, but you may add any, however, if you think of any later. Read the order, Mr. District Attorney."

The District Attorney then read the order for the arrest of the defendants set forth in the record in said cause, the defendants were directed to stand up and the court addressed them as follows:

" Judge Wilson: The findings of fact, all of which are within the personal knowledge of this Court, will be made in the order entered:

" Now, gentlemen, it is a matter almost of common knowledge that the Courts may be lawfully criticised the same as any other branch of the government, and that it is not unlawful or a contempt of the Court for any person, including newspapers, to pass criticisms upon the judiciary, including the Federal Courts and the judges regardless of their truth or falsity, when those criticisms are concerning past matters not at the time pending in the Courts. This law is based upon sound principle. Every branch of the Government needs constructive criticism; when it is such it is wholesome and helpful; no judge I think welcomes it more nor fears it less than the Judge of this Court. But it is altogether a different proposition and is unlawful and clearly constitutes a contempt of Court for any litigant or attorney to pass such in the presence of the Court, not in a respectful, but in a contemptuous and slanderous manner concerning matters then pending and later to be disposed of by the Court.

" It is obvious upon a reading of this letter that you deliberately designed to improperly influence the Court in these pending matters wherein no disqualification is suggested, and you were very careful to suggest that the Court was not disqualified in certain matters, and it is the view of the Court that it was your thought and aim to destroy the independence and the very impartiality of the Court as to those matters.

"And I have some more things I should like to remind you gentlemen of, your conduct and course as litigant and as an attorney of this Court, in many respects, has been reprehensible. You have filled your pleadings with scandalous charges against trusted officials of this Court. You have charged that the Referee in Bankruptcy, the attorneys for the petitioning creditors and the Trustee in Bankruptcy entered into a corrupt conspiracy to do

many unlawful things all to deprive you, J. L. Walker, of your rights, in this Court. And not only that, but while the jury were deliberating in cause No. 984, and though in charge of the marshal of this Court, you both of you being a party to it, employed a private detective to follow and shadow them with a view of reporting to you any corrupt conduct on their part; and you, J. L. Walker, after the jury had rendered its verdict of fifty-six thousand dollars against you, you employed this same detective, whose sworn statement I hold in my hand, to follow the foreman of the jury, Mr. E. G. Thomas, an honorable and respected citizen of Tarrant County, stating that you expected him to meet some one and be paid off, in other words, to receive bribe money for his verdict in said cause. And not only that, but you gave this same private detective to understand, that another one of the jurors, an honorable citizen of Parker County, had been improperly approached and influenced as a juror in this case—

" Mr. J. L. Walker: Your Honor, pardon me, but I would like to state that J. L. Walker did but what he is in position to prove, and I have it in my pocket—

" —Mr. Marshal, cause this man to desist.

" Mr. J. L. Walker: I beg your pardon I thought I had the right to speak now.

" Judge Wilson: No, you haven't got a right. Your time to reply is passed.

" In view of all this, it is not surprising that you men would deliver this letter to the Court with the utterly false statement in it that this Court had permitted himself to be improperly influenced and whispered to by interested parties against a litigant in this Court. It is a simple and easy matter to analyze the character of any man who is expecting every other man to act dishonestly and corruptly.

" Your whole course, as I say, has been contemptible, not only in this matter, and it is not surprising that you delivered this letter to the Court and is surprising that

you did not state more in the letter, and of course you are in contempt, if you are not, you have your remedy, and you, J. L. Walker, I sentence to the Tarrant County jail for thirty days and the payment of a five hundred dollar fine—

" Mr. McCormick: I doubt whether your Honor has the authority to assess both fine and imprisonment. The statute says you may punish by ' fine or imprisonment.' I believe I would suggest that you visit such fine as you see fit, or such imprisonment, but not both.

" Judge Wilson: I assess a punishment of thirty days against each of these respondents."

Mr. Cooke asked that a bond be fixed pending appeal.

" Mr. McCormick: An appeal does not lie in such a case. The evidence, gentlemen, if at all, must be reviewed by writ of error, if reviewed at all.

" Mr. Clay Cooke: The statement of the Court is he will consider a writ of error or appeal. In this case we will have sixty days—

" Judge Wilson: Take these respondents to jail, Mr. Marshal.

" Mr. McCormick: If they are going to take the full sixty days on the matter—

" Judge Wilson: No, there is not going to be any sixty days, the higher Court is going to pass upon this matter at once. . . .

" Mr. Dedmon: Did your Honor fix the amount of the bond?

" Judge Wilson: One thousand dollars. I am not allowing them bond, not releasing the defendants. It is a writ of error bond.

" Mr. Dedmon: You mean you are not going to let them appeal from the order adjudging them to spend thirty days in jail?

" Judge Wilson: If they perfect this appeal, I might release them from jail—show that they are going to appeal it and do it in a hurry."

. *Mr. Edwin C. Brandenburg,* with whom *Messrs J. A. Templeton, G. A. Stultz, W. E. Spell,* and *E. Howard McCaleb* were on the brief, for petitioner.

Petitioner's conviction was obtained without due process of law.

He was sentenced without any affidavit or other authentic charge being brought against him, or any notice of the offense charged, *Phillips S. & T., Co.,* v. *Amalgamated Ass'n.,* 208 Fed. 335; *Sona* v. *Aluminum Castings Co.,* 214 Fed. 936.

Even the purported charge states no offense against the laws of the United States. If everything in the purported charge were admitted to be true, it would merely mean that the judge held certain private " views " as to certain private, confidential acts of the defendant, and these views might or might not be justified by the facts. *Ex parte Hudgins,* 249 U. S. 378; *Ex parte Craig,* 274 Fed. 185.

Petitioner was not informed of the nature and cause of the accusation. The statute was in no respect complied with. The petitioner was arrested on a warrant that neither charged an offense nor contained a certified copy of any charge, and was immediately committed to jail for 30 days. *Sona* v. *Aluminum Castings Co.,* supra; *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418; *Ex parte Robinson,* 19 Wall. 505; *Windsor* v. *McVeigh,* 93 U. S. 274; *Galpin* v. *Page,* 18 Wall. 350; *In re Holt,* 55 N. J. L. 384.

Petitioner was denied the assistance of counsel for his defense. No notice was given him of the charge, though the trial judge consumed ten days after receiving the letter in which it appears he engaged the services of a special prosecutor from another city, formulated the charge, prepared for the prosecution; then, after such careful preparation, a marshal is sent out to bring petitioner under arrest *instanter* before the court, where he

is denied all reasonable opportunity to consult counsel, or to obtain the assistance of counsel for his defense. The fact that this is a criminal prosecution and that defendant was denied the assistance of counsel for his defense can not be, and is not, denied. It is the assistance of counsel that the Constitution guarantees. The right of counsel, even if granted, without the right of consultation is barren and fruitless. The arrest, the alleged hearing, the conviction and the incarceration of defendant all occurred in a very short space of time in the forenoon, and defendant during all of that time was in the custody of the marshal or before the bar of the court in custody, with no opportunity either to employ or consult with counsel.

Defendant was not allowed to plead to the charge, and the common law right to purge himself by his oath was denied him. *Craig* v. *Hecht*, 260 U. S. 714. The only objection to the letter apparently urged in the purported charge is the statement of the defendant's former opinion that the judge was big enough and broad enough to overcome the bias and prejudice admittedly existing, and the conclusion that he was mistaken therein. This is not a contempt. It is merely the statement of a truth, which this record clearly discloses. It is an unfortunate situation that a lawyer may, with flattery and praise, seek to and actually influence judicial action, but he cannot speak the truth with candor without being sent to jail. This is not as it should be. *Ex parte Robinson, supra; Hovey* v. *Elliott,* 167 U. S. 409; *McVeigh* v. *United States,* 11 Wall. 259; *Windsor* v. *McVeigh,* 93 U. S. 277; *Galpin* v. *Page,* 18 Wall. 350; *In re Pittman,* 1 Curt. (U. S.) 186.

Petitioner was convicted without being confronted by any witnesses or evidence against him, and there is no evidence of guilt in the record to sustain the conviction.

The record on appeal was wrongfully altered after the appeal was perfected by arbitrarily striking out defend-

42684°—25——34

ant's answer and motion in arrest of judgment, and for a new trial; and the court's refusal to act on the same was a refusal to perform the duties required of it by law; and striking the papers from the record on appeal after appeal was perfected was an invasion of the province and jurisdiction of appellate courts, and deprived petitioner of substantial legal rights. A sentence imposed for an offense not charged is void.

*Mr. Merrill E. Otis,* Special Assistant to the Attorney General, with whom *Solicitor General Beck* was on the brief, for the United States.

Petitioner was guilty of contempt, § 725, Rev. Stats. This act is not the source, of course, of the power of the federal courts to punish contempts. It but restricts their inherent power. Under it they can only punish as contempt " the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice."

Petitioner's act in writing and delivering the letter, was in the " presence of the court." *In re Savin, Petitioner,* 131 U. S. 267. It was also " misbehavior " to say to the judge in writing, as the petitioner here did, that in a case just ended and in which a motion for a new trial was pending, he had proved himself not big enough and not broad enough to restrain his bias and prejudice against a litigant; that in his conduct of the trial he had manifested such prejudice and bias; and that he was possessed of this prejudice and bias against the litigant because he had permitted slanders to be whispered in his ears; to say to the judge that the petitioner's hopes that the judge would conduct himself as a judge should had been shattered by the judge's conduct, and not only shattered but rudely shattered; to say all of these things, and in substance they were all said in the petitioner's letter, was patently to offer insult to the court and openly to impeach his honor both as judge and man. Certainly it is no defense

to say that there were parts of the letter that were not improper, or that much of it might lawfully have been incorporated in an affidavit to disqualify the judge in cases not yet tried. There remains the offending language which had no reference to the cases yet for trial but referred solely to 'the case still pending on motion for new trial.

Petitioner was accorded a fair hearing. The word "warrant" as used in the Fourth Amendment has never been held to include an attachment to answer for contempt of court. It has been repeatedly held that in a case of a direct contempt neither affidavit, notice, rule to show cause, nor other process, is a necessary prerequisite to the court's jurisdiction to punish the contempt. *In re Terry,* 128 U. S. 289. The petitioner waived any objection to the basis of the attachment by pleading orally and in writing to the charge upon its merits. This objection is contained in none of the assignments of error.

Neither *Phillips S. & T. Co.* v. *Amalgamated Ass'n,* 208 Fed. 335, nor *Sona* v. *Aluminum Castings Co.,* 214 Fed. 936, was a case of direct contempt committed in the presence of the court. No formal charge whatever was necessary in case of a contempt committed in the presence of the court. The statute does not require that the " misbehavior," if committed in the presence of the court, must *also* be of such character as to " obstruct the administration of justice." That qualification is required only as to misbehavior not committed " in the presence of the court." *Ex parte Hudgins,* 249 U. S. 378; *Ex parte Craig,* 274 Fed. 177 distinguished.

Article IV of the Amendments providing that " In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation," is one of those constitutional limitations which this court said in the *Hudgins Case, supra,* did not apply to a contempt committed " in the presence of the

court." Moreover, the record clearly shows that in truth and fact the petitioner was fully informed as to the charge against him before he undertook to state his defense.

As for Article VI, relating to the right of counsel in all criminal prosecutions, the inapplicability of this amendment, with its several guarantees, including that of trial by jury, to a proceeding for the summary punishment of contempt in the presence of the court is so well recognized that discussion of it is idle. One charged with a direct contempt committed in the presence of the court has not the right to plead formally to the charge. Here again the *Hudgins Case* is in point and decisive. The most petitioner was entitled to was opportunity to deny authorship of the offending letter, since it was delivered by the hand of another although in his presence. But he admitted authorship. There was nothing that might have been proper subject matter of any further hearing. Such hearing as he was entitled to he had.

Petitioner was deprived of no legal right by any failure to transmit to the Circuit Court of Appeals what purported to be an answer admittedly offered for filing after writ of error had been allowed.

MR. CHIEF JUSTICE TAFT, after stating the case as above, delivered the opinion of the Court.

The first objection to the sentence of the court, made on behalf of the petitioner, is that the letter written to the judge is not a contempt of the court. Section 21 of the Judicial Code contains the following:

" Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in the section last

preceding, or chosen in the manner prescribed in section twenty-three, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one such affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith."

It is said that all that the petitioner intended to do by this letter was to advise the court of the desire of his client to have another judge try the four cases yet to be heard, and of his own desire to avoid the necessity of filing an affidavit of bias under the above section in those cases by inducing the regular judge voluntarily to withdraw. Had the letter contained no more than this, we agree with the Circuit Court of Appeals that it would not have been improper.

But we also agree with that court that the letter as written did more than this. The letter was written the morning after the verdict in the heat of the petitioner's evident indignation at the judge's conduct of the case and the verdict. At least two weeks would elapse before it was necessary to file an affidavit of bias in the other cases.[1] The letter was written and delivered pending further necessary proceedings in the very case which aroused the writer's anger. While it was doubtless intended to notify the judge that he would not be allowed to sit in the other cases, its tenor shows that it was also written to gratify the writer's desire to characterize in severe language, per-

---

[1] The next term of the court at Forth Worth would have been the second Monday in March (Judicial Code, § 108) so that the affidavit required by § 21 for disqualification need not have been filed before March 2nd. The letter was written February 15th.

'sonally derogatory to the judge, his conduct of the pending case. Though the writer addressed the judge throughout as "Your Honor", this did not conceal but emphasized the personal reflection intended. The expression of disappointed hope that the judge was big enough and broad enough to overcome his personal prejudice against petitioner's client and that the client would have the privilege of rebutting the whispered slanders to which the judge had lent his ear, and the declaration that his confidence in the judge had been rudely shattered, were personally condemnatory and were calculated to stir the judge's resentment and anger. Considering the circumstances and the fact that the case was still before the judge, but without intending to foreclose the right of the petitioner to be heard with witnesses and argument on this issue when given an opportunity, we agree with the Circuit Court of Appeals that the letter was contemptuous.

But while we reach this conclusion, we are far from approving the course of the judge in the procedure, or absence of it, adopted by him in sentencing the petitioner. He treated the case as if the objectionable words had been uttered against him in open court.

To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law and the punishment imposed is due process of law. Such a case had great consideration in the decision of this Court in *Ex parte Terry,* 128 U. S. 289. It was there held that a court of the United States upon the commission of a contempt in open court

might upon its own knowledge of the facts without further proof, without issue or trial, and without hearing an explanation of the motives of the offender, immediately proceed to determine whether the facts justified punishment and to inflict such punishment as was fitting under the law.

The important distinction between the *Terry Case* and the one at bar is that this contempt was not in open court. This is fully brought out in *Savin, Petitioner,* 131 U. S. 267. The contempt there was an effort to deter a witness, in attendance upon a court of the United States in obedience to a subpoena, while he was in a waiting room for witnesses near the court room, from testifying, and the offering him money in the hallway of the courthouse as an inducement. This was held to be " misbehavior in the presence of the Court " under § 725 R. S. (now § 268 of the Judicial Code). The Court, speaking by Mr. Justice Harlan, said (page 277):

" We are of opinion that, within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court. It is true that the mode of proceeding for contempt is not the same in every case of such misbehavior. Where the contempt is committed directly under the eye or within the view of the court, it may proceed ' upon its own knowledge of the facts and punish the offender, without further proof, and without issue or trial in any form,' *Ex parte Terry,* 128 U. S. 289, 309; whereas, in cases of misbehavior of which the judge can not have such personal knowledge, and is informed thereof only by confession of the party, or by testimony under oath of others, the proper practice is, by rule or other process, to require the offender to appear and show cause why he should not be punished. 4 Bl. Com. 286."

This difference between the scope of the words of the statute "in the presence of the court," on the one hand, and the meaning of the narrower phrase "under the eye or within the view of the court," or "in open court" or "in the face of the court," or "in *facie curiae*," on the other, is thus clearly indicated and is further elaborated in the opinion.

We think the distinction finds its reason not any more in the ability of the judge to see and hear what happens in the open court than in the danger that, unless such an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public in the "very hallowed place of justice," as Blackstone has it, is not instantly suppressed and punished, demoralization of the court's authority will follow. Punishment without issue or trial was so contrary to the usual and ordinarily indispensable hearing before judgment, constituting due process, that the assumption that the court saw everything that went on in open court was required to justify the exception; but the need for immediate penal vindication of the dignity of the court created it.

When the contempt is not in open court, however, there is no such right or reason in dispensing with the necessity of charges and the opportunity of the accused to present his defense by witnesses and argument. The exact form of the procedure in the prosecution of such contempts is not important. The Court in *Randall* v. *Brigham,* 7 Wall. 523, 540, in speaking of what was necessary in proceedings against an attorney at law for malpractice said:

"All that is requisite to their validity is that, when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defénce. The manner in which the proceeding shall be conducted, so that it be without oppression or unfairness, is a matter of judicial regulation."

The Court in *Savin, Petitioner,* 131 U. S. 267, applied this rule to proceedings for contempt.

Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed. See *Hollingsworth* v. *Duane,* 12 Fed. Cases 359, 360; *In re Stewart,* 118 La. 827; *Ex parte Clark,* 208 Mo. 121.

The proceeding in this case was not conducted in accordance with the foregoing principles. We have set out at great length in the statement which precedes this opinion the substance of what took place before, at and after the sentence. The first step by the court was an order of attachment and the arrest of the petitioner. It is not shown that the writ of attachment contained a copy of the order of the court, and we are not advised that the petitioner had an exact idea of the purport of the charges until the order was read. In such a case, and after so long a delay, it would seem to have been proper practice, as laid down by Blackstone, 4 Commentaries, 286, to issue a rule to show cause. The rule should have contained enough to inform the defendant of the nature of the contempt charged. See *Hollingsworth* v. *Duane,* 12 Fed. Cases 367, 369. Without any ground shown for supposing that a rule would not have brought in the alleged contemnors, it was harsh under the circumstances to order the arrest.

After the court elicited from the petitioner the admission that he had written the letter, the court refused him time to secure and consult counsel, prepare his defense and call witnesses, and this although the court itself

had taken time to call in counsel as a friend of the court. The presence of the United States District Attorney also was secured by the court on the ground that it was a criminal case.

The court proceeded on the theory that the admission that the petitioner had written the letter foreclosed evidence or argument. In cases like this, where the intention with which acts of contempt have been committed must necessarily and properly have an important bearing on the degree of guilt and the penalty which should be imposed, the court can not exclude evidence in mitigation. It is a proper part of the defense. There was a suggestion in one of the remarks of the petitioner to the court that, while he had dictated the letter he had not read it carefully, and that he had trusted to the advice of his partner in sending it; but he was not given a chance to call witnesses or to make a full statement on this point. He was interrupted by the court or the counsel of the court in every attempted explanation. On the other hand, when the court came to pronounce sentence, it commented on the conduct of both the petitioner and his client in making scandalous charges in the pleadings against officials of the court and charges of a corrupt conspiracy against the trustee and referee in bankruptcy, and in employing a detective to shadow jurymen while in charge of the marshal, and afterwards to detect bribery of them, in proof of which the court referred to a sworn statement of the detective in its hands, which had not been submitted to the petitioner or his client. When Walker questioned this, the court directed the marshal to prevent further interruption. It was quite clear that the court considered the facts thus announced as in aggravation of the contempt. Yet no opportunity had been given to the contemnors even to hear these new charges of the court, much less to meet or explain them, before the sentence. We think the procedure pursued was unfair and oppressive to the petitioner.

Another feature of this case seems to call for remark. The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court is most important and indispensable. But its exercise is a delicate one and care is needed to avoid arbitrary or oppressive conclusions. This rule of caution is more mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge. The judge must banish the slightest personal impulse to reprisal, but he should not bend backward and injure the authority of the court by too great leniency. The substitution of another judge would avoid either tendency but it is not always possible. Of course where acts of contempt are palpably aggravated by a personal attack upon the judge in order to drive the judge out of the case for ulterior reasons, the scheme should not be permitted to succeed. But attempts of this kind are rare. All of such cases, however, present difficult questions for the judge. All we can say upon the whole matter is that where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly ask that one of his fellow judges take his place. *Cornish* v. *The United States,* 299 Fed. 283, 285; *Toledo Company* v. *The United States,* 237 Fed. 986, 988.

The case before us is one in which the issue between the judge and the parties had come to involve marked personal feeling that did not make for an impartial and calm judicial consideration and conclusion, as the statement of the proceedings abundantly shows. We think, therefore, that when this case again reaches the District Court to which it must be remanded, the judge who imposed the sentence herein should invite the senior circuit judge of the circuit to assign another judge to sit in the second hearing of the charge against the petitioner.

Judgment of the Circuit Court of Appeals is reversed and the case is remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*