MANUEL DE TORRES, Petitioner, *v.* DISTRICT COURT OF SAN JUAN, J. L. CÓRDOVA DÍAZ, JUDGE, Respondent.

No. 1226.   Argued March 4, 1941.—Decided April 22, 1941.

Manuel de Torres, pro se; George A. Malcolm, Attorney General of Puerto Rico; R. A. Gómez, Prosecuting Attorney of the Supreme Court and Luis Negrón Fernández, Assistant Prosecuting Attorney, for The People.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is a certiorari proceeding whereby Manuel de Torres prays this Court to annul an order to show cause issued in a contempt proceeding instituted against him, and the judgment rendered therein.

The writ was issued and the record of the proceedings for contempt followed in the District Court of San Juan was sent for. The first pleading in the record is the order to show cause issued on December 17, 1940, which says:

"WHEREAS: The undersigned district judge, during one of the days of the month of December of this year, 1940, received copy of a letter addressed to Dr. Rupert Emerson by the defendant Manuel de Torres, where, among others, the following statements are made:

" ' . . . . and that both the San Juan District Prosecutor and the Attorney General of Puerto Rico, Hon. George Arthur Malcolm, are in fact conspiring with Gonzalo Aponte, Judge Marcelino Romany and others to defraud the writer of his capital, and his properties.

" ' *     *     *     *     *     *     *

" 'Until now and for the past two years I have been peacefully trying to recover my confiscated properties through peaceful, law abiding legal action in the San Juan District Court. The District Court of San Juan, however, through the medium of its Judges Roberto Todd, Jr. and Marcelino Romany, has been criminally cooperating with, aiding, assisting and protecting the confiscators of my properties to illegally retain them; and in this they have been supported by the San Juan District Prosecutor and the Attorney General of Puerto Rico to both of whom I have previously appealed and both of whom have denied me the right to prosecute the confiscators

of my properties on criminal charges allegedly on the grounds that no prosecution can be started until the civil suit is disposed of by the district court; whose Judge Romany in turn has made up his mind that he will not render his decision until it is too late to start any criminal action against his protegees.

" 'Corrupt Judge Marcelino Romany, before whom trial of action 31058 was held on October 18th and 19th, 1939, more than thirteen months ago, is benevolently and criminally cooperating with the San Juan District Prosecutor and Attorney General Malcolm to prevent the prosecution of Juan Ramón de Torres and Juana Vanderlinden, confiscators of my funds and my properties, and embezzlers of the funds of the estate of Ramón A. Torres, by delaying decision in case 31058 until the statutory three years provided by the statute of limitations shall have outlawed any criminal action against them.

" '*        *        *        *        *        *        *

" 'Case 31058 still "pending decision by the court" more than five months after the referee rendered his report and apparently relegated to eternity by corrupt Judge Marcelino Romany.

" 'And while Romany keeps the case sleeping under lock and key in his private office to insure the freedom of his protegee Juan Ramón de Torres, and to make sure that no one stops him from continuing appropriating other people's money, the San Juan District Prosecutor as well as the Attorney General of Puerto Rico are cooperating with Judge Romany to insure the freedom of Juan Ramón de Torres by refusing to prosecute referee Aponte for falsifying and forging his report to the Court.

" 'All the foregoing has been written to show Attorney General Malcolm that until now I have only been moving according to law, peacefully and patiently appealing to the San Juan District Court, for redress through the means provided by law—all of which have failed due to the abdication of Judges Todd and Romany and of the Attorney General himself in favor of control of their respective offices by criminals, thus creating a state of lawlessness in Puerto Rico under which a man who has managed another's properties under power of attorney can refuse to render an accounting of the funds collected or received as attorney for his principal, and can continue retaining those properties and collecting the income from same without accounting to the real owners, and can depend upon Judge Marcelino Romany to withhold his decision in a case started to compel that man to render an accounting to his principal as provided by law, until such time as criminal action (on) him will have been out-

lawed by the statute of limitations, and while through all this our most illustratious Attorney General of Puerto Rico George Arthur Malcolm has been insisting that he cannot prosecute Juan Ramón de Torres until Romany decides case 31058, and now the Attorney General apparently refusing to prosecute Gonzalo Aponte for falsifying and forging his report to the Court, and as long as the Attorney General insists on waiting for Romany to decide and Romany insists on not deciding, I can continue being robbed and deprived of the income of my properties as well as of the funds collected by Juan Ramón de Torres in exercise of my power of attorney, all with the aid, assistance, cooperation and protection of the Attorney General of Puerto Rico and his subordinate, the San Juan District Prosecutor, as well as with the aid and assistance of corrupt Judges Roberto Todd, Jr. and Marcelino Romany.

 '' ' *  *  *  *  *  *  *

 '' 'Failure on Mr. Malcolm's part to take immediate action within not more than 10 days, will compel me to proceed by force and violence for the protection of my rights and the recovery of my funds and properties. I am resolved to forfeit my liberty if necessary to obtain a judicial administrator for the properties and to force a decision of case 31058 by Judge Romany if Attorney General Malcolm refuses to use his administrative powers to compel this corrupt Judge Romany to decide case 31058 . . . . I am driven by Attorney General Malcolm, Judge Todd and Judge Romany to use force and violence to attain what could be attained and what I have been trying to attain by lawful, peaceful procedure as provided by law, if honest judges were on the San Juan District Court bench instead of criminals like Marcelino Romany.

 '' 'And here, Mr. Malcolm, I will justify the use of that word "criminal" as applied to Judge Marcelino Romany. I will and must prove to you that he is a criminal, unfit to occupy the position of District Judge and that the use of the word "criminal" as applied to Marcelino Romany is not limited to his complicity in a conspiracy to defraud me by indefinitely delaying decision in case 31058 (cases now before Judge Romany are, I believe in the 34,000 numeration, and with, I believe, but one other exception, my case is the oldest pending decision by him.

 '' ' *  *  *  *  *  *  *

 '' 'Romany, trial judge in case 31058 is criminally delaying decision in case 31058 to permit Juan Ramón de Torres, a protegee of Romany, to remain in possession of my funds and my confiscated properties.

" 'Romany keeps on deciding more recent cases than case 31058, with the criminal intent of concealing felonies committed in connection with case 31058 by the defendants and their lawyers, thereby helping to deprive me of my properties without due process of law, the laws of Puerto Rico notwithstanding.

" 'I will prove that Judge Romany's interest in delaying a solution of case 31058 is not limited to conspiring with others to deprive me illegally of my properties, . . . .

" 'Now, Mr. Malcolm, you will probably understand why, Romany, as trial Judge in case 31058, is holding up his decision of the case, it being one against his friend Juan Ramón de Torres, and involving as it does the very same property, Sol 19.

" ' *     *      *      *      *      *      *

" ' . . . . Juan Ramón de Torres must feel pretty sure about his ability to continue bribing judges, fiscals and even the Attorney General to keep out of prosecution and prison in spite of all his sworn testimony in the Zamorano case and in case 31058 tried before his friend Romany.

" 'The foregoing, Mr. Malcolm, are only some of the reasons why corrupt Judge Romany is holding up his decision in case 31058. Romany, corrupt Judge Romany, is not interested in deciding a case that may send his protegee to prison and that may result in criminal investigation which will result in disclosures of Romany and Massari's own criminal actions as district prosecutors, which may in turn cause their removal as district Judges.

" 'I can prove to any jury that the San Juan District Court has ceased to function as a Tribunal of Justice and that at least two of its judges, Roberto Todd, Jr. and Marcelino Romany, use their official positions as judges to permit criminals to confiscate other people's properties and retain them illegally.

" ' *     *      *      *      *      *      *

" ' . . . . it will establish the basis for my acquittal, and for the ultimate prosecution not only of Gonzalo Aponte and Juan Ramón de Torres, but also of Marcelino Romany, Domingo Massari, Roberto Todd, and our most illustrious protector of criminals Attorney General George Arthur Malcolm. . . .

" ' . . . . AND THAT THE JUDGES, THE DISTRICT PROSECUTORS, AND EVEN THE ATTORNEY GENERAL GEORGE ARTHUR MALCOLM CONSPIRE WITH CRIMINALS TO DEPRIVE CITIZENS OF THEIR RIGHTS AND PROPERTIES, THE LAWS OF PUERTO RICO NOTWITHSTANDING.

" '      *      *      *      *      *      *      *

" ' . . . . while the authorities, Fiscals Franco and Massari, Judges Todd and Romany and Attorney General Malcolm have been using their official positions to enable that criminal Juan Ramón de Torres to continue robbing me of the money that was so badly needed to save my daughter's life, and to enable him to remain in possession of my confiscated properties, and while corrupt Judge Romany has been delaying decision in case 31058 for fear that his decision may send his friend and protegee to prison and cause his own removal as District Judge;

" '      *      *      *      *      *      *      *

" ' . . . . if Romany continues to refuse to decide the case, by arresting Romany, Aponte, Juan Ramón de Torres, and others, for conspiracy to defraud or on any of the many other charges which the Attorney General knows his office can prove against Romany and the others.'

"WHEREAS: Those statements refer to Civil Case No. 31,058, filed by the defendant Manuel de Torres against Juan Ramón de Torres and Juana Vanderlinden.

"WHEREAS: The above copied statements constitute a defamatory and insulting comment on the proceedings of this court, tending unjustly, to discredit this court and especially the undersigned district judge, and sent by the defendant Manuel de Torres by certified post to the district judge who issues this order;

"THEREFORE, this court orders the defendant Manuel de Torres to appear before the Court on December 27, 1940, at 9 a.m., to state the reasons, if he has any, why he should not be punished for contempt of this court.

"Given in San Juan, P. R., this 17th day of December, 1940. (s) M. Romany, Judge."

Duly served with copy of the order, Torres requested a 40-day extension which was denied, and then he moved—on December 23, 1940—that the order be annulled for the reasons which he set forth.

Then follow two documents marked People's Exhibits 1 and 2—civil case 31,058—December 27, 1940. The first is a carbon copy of the "Memorandum to Hon. George Arthur Malcolm, Attorney General of Puerto Rico," fourteen typewritten pages, in single space, and the second a letter to the aforesaid Attorney General accompanying the original

memorandum signed by the said Manuel de Torres, at the bottom of which it is stated:

"Copies to: Dr. Rupert Emerson, Director, Division of Territories and Possessions, Department of the Interior.—Hon. Luis Muñoz Marín, President, Partido Pôpular Democrático.—Hon. William H. King, Senate Judiciary Committee, U. S. Senate, Washington, D. C."

Then appears an envelope sent through the mail with the following address:

"Special Delivery.—Mr. Marcelino Romany, Concordia 31, Parada 13, Santurce, P. R."

Then follow carbon copies of a notice of opposition by the plaintiff to the report of the special master in case No. 31,058, of the District Court of San Juan, *Manuel de Torres* v. *Juan Ramón de Torres* and *Juana Vanderlinden*, examination of books and documents and collection of money, and an order of declaration of heirship, of Dr. Ramón A. Torres, issued December 12, 1921.

Immediately thereafter follows the opinion and judgment of the District Court which reads as follows:

"The defendant was charged with having sent to one of the judges of this court copy of a letter addressed by him to Dr. Ruppert Emerson, wherein he calls the conduct of said judge and also that of other officers, in relation to a case pending before this court, criminal and corrupt, and he threatens to resort to force and violence for the protection of his rights in case his complaints are not taken care of soon.

"The defendant filed a motion on a date prior to the day set for the hearing, requesting that the initial order in this proceeding be set aside, because the same does not set out a case of contempt according to the Act of March 1, 1902, as amended. It is true that the acts charged to defendant do not fall within the wording of any of the provisions of the first Section of said act, but notwithstanding that the cited act limits the power of a court as to the punishment applicable to contempt cases (*Coll* v. *Leake, Judge*, 17 P.R.R. 823, but see *dictum* apparently *contra* in *Ex parte Lastra*, 56 P.R.R. 534), does not expressly limit the power of the courts to punish for contempt

to those cases defined by the statute. Where there are statutory provisions which expressly pretend to limit the powers of the courts to determine what constitutes contempt, as for example in California, Pennsylvania, and the Federal Courts, there is some conflict between the authorities as to the right of the Legislature to approve said measures. (See article by Frankfurter and Landis in 37 Harvard Law Review 1010 and annotation in 121 A.L.R. 215.) In Puerto Rico, however, the statute does not expressly restrict the judicial power. It simply confers to courts the faculty of punishing for contempt in a series of cases. The absence in the local statute of restrictive wording, considered in the light of the idea had in 1902, when the statute was approved, of the judicial power in contempt proceedings, shows that it was not the legislative intent to intervene with the power of courts to determine in which cases punishment for contempt should be exercised for the purpose of protecting the prestige, dignity and efficacy of the judicial power. That is how our Supreme Court must have considered it in deciding that it constitutes contempt to address a letter to a court with the purpose of influencing the decision of a case pending before said court, without the Court considering it necessary to make reference to the statute of 1902, and notwithstanding that the act in question is not included among the contempts specified in said statute. *In re Rojas,* 17 P.R.R. 1055.

"In the case at bar the letter to which the complaint refers, contains slanderous criticisms of this court, tends unjustly to discredit the court, and the sending of a copy of the same to the judge before whom the case to which the letter refers is pending, can hardly be attributed to another motive than that the threats might influence the decision of the case. Therefore, the act with which the complaint charges the defendant constitutes contempt, for which reason his motion to set aside the complaint is denied. *Cooke* v. *United States,* 267 U. S. 517, 69 L. Ed. 767; *In re Rojas, supra;* and see the authorities cited in the annotation in 31 A.L.R. 1239.

"During the hearing the defendant admitted having written the letter to which the complaint refers, addressed to the Attorney General of Puerto Rico, and having sent copies of the same to Dr. Emerson and to one of the judges of this court, before whom the case to which the letter refers is pending. He explained that he had no intention of showing contempt of court and that he acted moved by the desperation caused in his mind by the economic troubles he was suffering, which were intimately related to the suit to which the

letter refers, and which has prevented him from attending in the proper manner serious physical illnesses of his daughter.

"The defendant's attitude and the explanation given by him lessen the seriousness of his offense, but they cannot erase it nor totally release him from the punishment which his conduct merits.

"The court finds the defendant guilty of the contempt charged, and considering his repentance, his economic conditions and the serious nature of the contempt committed, sentences him to pay a fine of $50 or a day in jail for every dollar in default, provided that the imprisonment shall in no case exceed 10 days.

"Given in open court, in San Juan, Puerto Rico, this 10th day of January, 1941.—(s) Jorge L. Córdova, District Judge.—Attest: (s) José L. Hernández, Secretary."

The petition of certiorari is very extensive. We think that the résumé which the prosecuting attorney makes in his report as to the grounds therefor is correct. They are:

"1.—That the judgment is null and void because the court exceeded its jurisdiction, since the proceeding followed was illegal, and irregular (a) because there has been no information filed by the district attorney; (b) because the district attorney intervened in the case against the petitioner notwithstanding that he had presented no information whatsoever.

"2.—That even assuming that the proceedings were correct, the judgment is null and void because the date and place of the alleged contempt are not expressed therein as required by law.

"3.—That even assuming that the proceedings were correct, the judgment is defective because it finds defendant guilty of having written a letter addressed to the Attorney General of Puerto Rico, while the order charges him with having addressed it to Dr. Rupert Emerson.

"4.—That even assuming the legality of the proceedings, the judgment is defective because the acts charged to defendant do not fall within the law of contempt.

5.—That the letter in question is a privileged communication."

The first motive is not well grounded. There was no need of filing an information. The order to show cause substitutes for it. It will be enough to cite what was stated by

this Court in *Sánchez* v. *Romany, Judge,* 53 P.R.R. 568, 569, to wit:

"We need not stop to consider whether a proceeding for constructive criminal contempt—arising out of a civil action, and directed against one or more of the parties thereto—is a 'special proceeding', as that term is used in section 295 of the Code of Civil Procedure. But see 4 Bancroft's Code Practice and Remedies, p. 3716, sec. 2895.

"It may be conceded that a criminal contempt in this jurisdiction is neither a misdemeanor nor a felony. It is not necessary that the charge be presented by indictment or information. Cases may arise in which some distinction must be drawn between a proceeding for criminal contempt and a criminal action. Without closing the door to further investigation, we are not now prepared to say that a proceeding for criminal contempt is not a criminal action within the meaning of that term as used in section 345."

■ As to the appearance of the district attorney in the contempt proceedings, there is nothing in the record, and if we take as true what is alleged by the petitioner himself, that the district attorney appeared because he was ordered to do so, we do not see how said appearance could cause the nullity of the proceedings.

■ Neither is the second motive well grounded, to wit: that the judgment appealed from is null and void because the date and place of the commission of the contempt are not expressed therein. The petitioner alleges that the law in force in the matter—Laws of 1906, p. 41—so requires.

What the Act of 1906 which he cites, requires, is that "whenever a person is fined or committed to jail for a contempt of court, an order or warrant for such fine or imprisonment must be signed by the judge delivering such sentence, setting forth the act or acts constituting such contempt, with the time and place of the commission thereof, and the circumstances, and specifying the sentence of the court; otherwise such sentence will be wholly invalid and inoperative." Penal Code, 1937 ed., p. 86.

The law refers, then, to two different documents, the sentence and the warrant, and it is in the latter that the law expressly demands that the date and place of the commission of the contempt should be stated, and not in the former, the sentence, as the petitioner claims. Up to now only the sentence has been rendered. The warrant has not yet been issued. The proceeding was suspended by virtue of the certiorari.

■ The mistake pointed out in the third argument of the petition was committed. The memorandum was not addressed to Dr. Emerson but to the Attorney General of Puerto Rico. But said mistake does not cause the nullity of the judgment, because it is a fact that a copy of said memorandum addressed to the Attorney General was mailed to the district judge who issued the order to show cause, and said copy contained a note at the bottom which showed that another copy had been sent to Dr. Emerson. The memorandum, whose author the petitioner admits to be, speaks for itself. And the judgment is clear on the matter.

■ The fourth paragraph raises the question that there is no law which punishes as contempt the acts charged to the petitioner.

The reasonings set forth in the opinion of the trial judge constitute sufficient answer. There was no error.

In 12 Am. Jur. 418–420, it is stated, in summing up the decisions:

"The power of inflicting punishment upon persons guilty of contempt of court may be regarded as an essential element of judicial authority. It is possessed as a part of the judicial authority granted to courts created by the Constitution of the United States or by the Constitutions of the several states. It is a power said to be inherent in all courts of general jurisdiction, whether they are state or Federal; such power exists in courts of general jurisdiction independently of any special or express grant of statute. In many instances the right of certain courts or tribunals to punish for contempt is expressly bestowed by statute, but such statutory authorization is unnecessary, so far as the courts of general jurisdic-

tion are concerned, and in general adds nothing to their power, al-
though so far as concerns the inferior courts statutory authority may
be necessary to empower them to act. If the court is one of general
jurisdiction, it is not material what it is called or what branch of
jurisprudence it administers. Its jurisdiction may be civil or cri-
minal, at law or in equity. In any case, it necessarily has power to
punish for contempt if it is a court of record or of general juris-
diction. If the court is not within either classification, it still may
exercise the power to punish for contempt if it is a court mentioned
in the Constitution and is therein given power to exercise judicial
functions in cases of the class in which it assumes to act, subject to
such restrictions and conditions as may be prescribed by statute. Al-
though the name of a court is not always an accurate index of its
essential characteristics and rank in the judicial scheme, and courts
of the same name sometimes vary considerably in these respects, gen-
erally state, circuit, district, and superior courts, and courts of com-
mon pleas are courts of general jurisdiction and therefore possess
inherent power to punish for contempt. Ordinarily, the highest state
courts and the intermediate appellate courts have inherent power to
punish contempts of every kind and character. In some states,
courts of chancery or equity have inherent power to punish for con-
tempt; in others, however, such power is statutory. County courts
generally have inherent and statutory powers to punish contempts.''

■ The petitioner finally holds as his fifth ground that
we have to do here with a privileged communication. His
contention has no merit.

The petitioner did not limit himself to address the mem-
orandum to the Attorney General but he sent copies of the
same to Dr. Emerson and to the judge entrusted with the
decision of the case, with the evident purpose of influencing
the decision of the same.

The memorandum is in such a manner slanderous and
threatening that there is no need for us to stop and detail
the slanders and threats which it contains. They arise in
number, openly, everywhere, from those parts of the same
which are transcribed in the order to show cause.

■ With regard to the weight of the evidence, it will
suffice to say that we are acting within a certiorari proceed-
ing wherein we only have to investigate whether or not the

court acted with jurisdiction and whether the due process of law was followed. The appraisal of the evidence pertains to the trial judge.

By virtue of the aforesaid the annullment of the writ is in order and the record should be remanded to the district court so that the proceeding may continue according to law, but we deem it also proper to say that in our judgment the power to punish for contempt should only be exercised in truly justified cases when the ends of justice so demand it.

The better practice is to ignore personal offenses which may be caused to the judges, and these should rely in their cool procedure, firm and unprejudiced, and the final decision of the case based strictly on the merits of the same will constitute a more effective vindication than the direct conviction of the offender.

It is when the contempt tends to obstruct, and in fact obstructs the proper administration of justice, when peace is disturbed or the orders of the court are disobeyed, that the judges should act without delay. Then their action is imperative as something necessary, and it exercises a healthy influence in the community, which realizes that the courts, strongholds of the rights of the citizen, not only give to each one what belongs to him, but also that they have the power to perform their mission overcoming the obstacles which may arise by summarily punishing those who create the obstacles.

On the contrary, when the contempt is relied on too frequently, for personal offenses to the judges, although technically there may be a reason to punish the offender, the prestige of the courts in the social conscience instead of being strengthened is weakened, and the extraordinary faculty of being judge and party that the exercise of the power implies, gives the impression of the use of a privilege rather than that of the fulfillment of an obligation.

Mr. Justice Todd, Jr., took no part in the decision of this case.