TERRELL, Justice
(concurring).
I agree with the answer to the questions presented and explored in the opinion of Mr. Chief Justice MATHEWS. While there were conflicts in the evidence, I think there was ample support for the finding that petitioner was attempting to obstruct and interfere with the administration of justice. The time and the circumstances under which he approached Dr. Fernay, an expert witness appointed by the court, and the statements made to him by petitioner could have had no other purpose. I think the fact that Dr. Fernay was relieved in six days and did not testify as an expert but did give some testimony to the effect that he was not influenced by what petitioner communicated to him tended to mitigate his offense, but it did not relieve him of the charge. I cannot see any basis for application of the “clear and present danger” rule to what took place after Dr. Fernay was relieved from testifying as an expert. If petitioner had plead ignorance and placed himself on the mercy of the court, he might have bettered his position.
I am convinced that the action of the trial court in imposing the judgment and punishment for contempt was warranted by the *694 Statute, F.S.Section 38.22, F.S.A. The point was not raised by petitioner but it is. evident from the rule nisi that the contempt charged amounted to a personal attack upon the integrity of the trial judge. When such a charge is so predicated, I think the better practice would be for the judge against whom it is lodged to follow the rule laid down by Chief Justice Taft in Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767—retire from the case and let another judge be substituted to try and adjudicate the charge. It is very difficult for even the best of judges to act with becoming restraint when his integrity is brought in question.
Then under our system of jurisprudence no person, not even a judge should sit in judgment in his own case. While it is indispensable that the orderly administration of justice be protected at all times and at all hazards and the primary responsibility for doing so rests in the court, its exercise is so delicate that it should be exercised with extreme caution. When its exercise culminates in contempt for what amounts to an assault on the court, it is all the more important as admonished by Chief Justice Taft, that there be not the slightest element of reprisal, neither should the authority of the court suffer from too great leniency by leaning in the opposite direction. There may be cases in which it will not be practicable to substitute another judge, but when it is practicable and individual or public rights will not unduly suffer, the better part of wisdom would require that it be done. Human nature is so constituted that it w„. 1 be most impossible for a judge to try a case involving a personal assault on his character without a show of resentment and all that such an impulse leads to. When there is this danger, he should not hesitate to request that another judge take his place. I do not think that such a case called for a jury trial as some have suggested. Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717.
For these reasons, I concur in the views of Mr. Chief Justice MATHEWS.
DREW, C. J., concurs.