**UNITED STATES of America, Plaintiff,**

v.

**Ana–Maria CARNESOLTAS, Defendant.**

**No. 89–6012–CR.**

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

July 7, 1989.

Barbara Petras, Asst. U.S. Atty., Fort Lauderdale, Fla., for plaintiff.

Theodore Klein, Fine, Jacobson, Schwartz, Nash, Block & England, Miami, Fla., Bruce Rogow, Fort Lauderdale, Fla., for defendant.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the motion to vacate order to show cause filed by the defendant. The government has filed an opposing response.

The motion is appropriately treated as a pretrial motion, filed pursuant to Federal Rule of Criminal Procedure 12. The defendant contends that the facts as alleged by the government, if true, do not furnish a basis for a criminal contempt conviction. This is an action filed pursuant to Federal Rule of Criminal Procedure 42(b); not a summary contempt order under section 42(a).

This case arises out of the case of *United States v. Nolan, et al.*, Case no. 86–6122–CR, before the Honorable William J. Zloch, United States District Judge. The defendant here, Ana–Maria Carnesoltas, was the court appointed counsel for the defendant, Donald Sears. On January 26, 1989, Judge Zloch entered an order to show cause why Ms. Carnesoltas should not be held in contempt of court.

The alleged contempt arises out of two incidents. The first incident occured on October 19, 1988 at the U.S. Marshal's Office at the U.S. Courthouse in Fort Lauderdale. Ms. Carnesoltas was returning a telephone call to the court in regards to an issue of the attorney's need to coordinate efforts with the Marshal's office in the scheduling of inmate witnesses for trial appearance. In the course of the conversation with Judge Zloch's courtroom deputy, Ms. Carnesoltas made several obscene comments, in a boisterous tone of voice, including the statement, "He[ ] [Judge Zloch] is trying to fuck me over." Carnesoltas then uttered several other obscene words telling the deputy, "And you can tell him [Judge Zloch] that."

The second alleged incident occured in open court before Judge Zloch on October 19, 1988. The Judge inquired of Ms. Carnesoltas as to the content of her conversation with the courtroom deputy. In response, Carnesoltas stated,

> I told you when we first started I knew what you [Judge Zloch] were up to.... I have no way of winning with you. You want to hold me in contempt. That's all you're after here....

These comments were made in response to Judge Zloch's inquiry after Carnesoltas stated, "I would like to take that [the telephone call with the courtroom deputy] up with you personally when this trial is over." After making these comments, Ms. Carnesoltas then requested a recess to consult counsel as to the imminent contempt citation. The court then excused the jury and recessed for the day.

A federal court's power to punish contemptuous conduct is found in section 401, title 18 of the United States Code. The applicable provision here, subsection (1), states, "A court of the United States shall have power to punish ...(1) misbehavior of

any person in its presence or so near thereto as to obstruct the administration of justice."

To establish a prima facie case of criminal contempt pursuant to section 401(1), the government must show: (1) conduct constituting misbehavior, (2) occuring in the court's presence or so near thereto as to obstruct the administration of justice, (3) rising to an obstruction of the administration of justice, and (4) done with intent to obstruct. *See United States v. Wright,* 854 F.2d 1263, 1264 (11th Cir.1988).

The first two elements are satisfied here. The defendant's conduct certainly constituted misconduct. In the case of the telephone conversation, the undignified and reprehensible use of obscene language was misconduct. While the in-court episode is less clear, the suggestion made by Ms. Carnesoltas that the Court had an improper ulterior motive in the form of a personal animosity towards her without offering some factual basis for such an accusation was misbehavior especially when made by an officer of the court.

As to the second element, this has also been established. The telephone conversation directed to Judge Zloch's chambers and made in the same courthouse was "so near" as to threaten an obstruction of justice. The dialogue between the Court and the defendant in open court was in the actual presence of the Court and was conducted in a public hearing.

The facts alleged, however, do not establish a prima facie showing of either an intent to obstruct or an obstruction of the administration of justice.

As to the open court incident, Ms. Carnesoltas explicitly offered to continue investigation of the telephone conversation to a later time so as not to delay the trial. Further, the fact that she requested a continuance after her dialogue with the Court to consult with counsel as to her own potential liability, cannot support a claim of an intent to obstruct the trial. While Judge Zloch was certainly at liberty to investigate the facts of the alleged contempt and is empowered to deal with instances of summary contempt in the presence of the court, the defendant's conduct here in response to the Court's inquiry does not demonstrate criminal intent or an obstruction of the administration of justice.

In terms of the incident involving the telephone conversation with the courtroom deputy, there are insufficient facts to demonstrate an obstruction of the administration of justice. While the defendant's conduct might support the element of an intent to obstruct, it did not rise to the level of a criminal contempt.

The government cites *Sacher v. United States,* 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952), reh'g denied, 343 U.S. 931, 72 S.Ct. 756, 96 L.Ed. 1341 (1952), for support. While the cited passages do resemble Carnesoltas' telephone conversations with the court official, the government only cites two episodes in the decision out of a long, sustained series of contemptuous conduct. As noted by the Supreme Court, the case involved "a course of conduct long-continued in the face of warnings" which extended over several months and which was found to have substantially delayed the trial. *See* 343 U.S. at 4–5, 72 S.Ct. at 452–453.

Citation is also made to *Cooke v. United States,* 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). The government relies upon this case to support the proposition that, "A deliberate and willful attack upon the honor and integrity of the court constitutes ... criminal contempt." *Government's Response* at 7. However, neither the Court's language or the facts support such an interpretation. The Court in *Cooke* was confronted with the intentional attempt by an attorney to improperly influence the court through an ex parte communication. The fact that the Court found the attorney's actions willfully directed at the judge to obtain an adversarial advantage distinguishes it from the case here. Further, the attorney in *Cooke* stated, in his letter to the court, that the judge was improperly considering ex parte communications and trial publicity in his conduct of the trial. He also suggested that the judge was biased against his client and, despite knowledge of this prejudice, was not going to

disqualify himself. These facts are distinguishable from Ms. Carnesoltas' statements in open court and in the telephone conversation which only impugn the dignity of the court to the extent that they implied Judge Zloch was improperly considering a personal dislike of counsel in his conduct of the trial.

A key assumption underlying the law of criminal contempt is that, "Judges are supposed to be men of fortitude, able to thrive in a hardy climate." *In re Little*, 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708 (1972) (per curiam) (citing *Craig v. Harney*, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947)). While the defendant's conduct in this case was certainly disrespectful and unprofessional, it does not constitute a basis for the crime of contempt.

Having considered the motion to vacate, and the record in this cause, it is hereby

ORDERED AND ADJUDGED that the motion to vacate is TREATED as a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b). Accordingly, having considered the above matters, the motion to dismiss is hereby GRANTED. This case shall stand DISMISSED.

DONE AND ORDERED.