ANN STREIFFER, WIFE OF/AND RICHARD STREIFFER

VERSUS

DELTATECH CONSTRUCTION, LLC AND SANDRA TOMASETTI

* NO. 2019-CA-0990

* COURT OF APPEAL

* FOURTH CIRCUIT

* STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2013-10916, DIVISION "I-14"
Honorable Piper D. Griffin, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Rosemary Ledet)

**BELSOME, J., CONCURS IN PART AND DISSENTS IN PART**
**LOBRANO, J., CONCURS IN PART AND DISSENTS IN PART AND**
**ASSIGNS REASONS**

James A. Gonczi
Michael S. Ricci
Jonathan L. Schultis
RICCI PARTNERS, LLC
101 W. Robert E. Lee Boulevard, Suite 400
New Orleans, LA 70124

    COUNSEL FOR PLAINTIFF/APPELLEE

Karl J. Guilbeau
1048 Lakeshore Blvd
Slidell, LA 70448

    COUNSEL FOR DEFENDANT/APPELLANT

    **AFFIRMED; REQUEST FOR FRIVOLOUS APPEAL**
    **DAMAGES DENIED**

          **March 25, 2020**

*RML*

This is a contempt proceeding arising in a civil action. From the trial court's July 9, 2019 judgment holding Deltatech Construction, LLC ("Deltatech") in contempt, Deltatech appeals. For the reasons that follow, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2013, Ann and Richard Streiffer sued Deltatech, a contractor they hired to renovate their home, and Sandra Tomasetti, Deltatech's managing member, for breach of contract and damages. After a three-day trial, the trial court entered judgment in the Streiffers' favor and against Deltatech and Ms. Tomasetti (the "Merits Judgment"). On appeal, this court affirmed the Merits Judgment as to Deltatech but reversed as to Ms. Tomasetti. *Streiffer v. Deltatech Constr., LLC*, 18-0155 (La. App. 4 Cir. 10/10/18), ___ So.3d ___, 2018 WL 4923559. The Louisiana Supreme Court denied Deltatech's writ application, rendering the Merits Judgment final. *Streiffer v. Deltatech Constr., LLC*, 18-2107 (La. 2/18/19), 263 So.3d 1154.

Subsequently, the Streiffers sought to enforce the Merits Judgment by filing a motion to examine Deltatech as the judgment debtor (the "Judgment Debtor Motion").[1] The trial court ordered "that the Manager of Deltatech Construction,

_____

[1] The Judgment Debtor Motion also sought to enforce a subsequent judgment casting Deltatech in judgment for the Streiffers' costs incurred in connection with litigating the Merits Judgment.

LLC, Sandra Tomasetti, appear in Open Court on the 24th day of May, 2019 at 9:00 a.m. to be examined as Judgment Debtor under the provisions of Louisiana Code of Civil Procedure Articles 2451 through 2456." The trial court further ordered that "that the Manager of Deltatech Construction, LLC, Sandra Tomasetti, be further notified and summoned to produce at the above time the books, papers, financial statements, and all other documents described in the Motion to Examine the Judgment Debtor." In response, Deltatech filed a motion to quash the Judgment Debtor Motion, contending that the Merits Judgment was unenforceable (the "Motion to Quash"). The Motion to Quash was also set for hearing on May 24, 2019.

At the May 24, 2019 hearing, neither Deltatech nor its counsel appeared. The Streiffers orally moved to have Deltatech held in contempt for failing to appear (the "Contempt Motion"). The trial court set the Contempt Motion for hearing on June 21, 2019, and continued the Judgment Debtor Motion and the Motion to Quash to the same date.

At the June 21, 2019 hearing, counsel for both parties appeared. The trial court denied the Motion to Quash and turned to the Judgment Debtor Motion. Ms. Tomasetti, however, failed to appear. The trial court inquired of Deltatech's counsel why Ms. Tomasetti had failed to appear. Deltatech's counsel responded as follows:

> Your Honor has already mention[ed] that I may take [the ruling denying the Motion to Quash] to the Fourth Circuit, I would file a suspensive appeal which would quash any obligation of the judgment debtor to be here to submit to the opposing party records of the LLC.

Based on this response, the trial court held Deltatech in contempt and ordered Deltatech to pay the Streiffers' attorney's fees and costs (the "Contempt Judgment").

This appeal by Deltatech followed. The Streiffers answered Deltatech's appeal, seeking frivolous appeal damages pursuant to La. C.C.P. art. 2164.[2]

## DISCUSSION

Although Deltatech assigns errors on appeal regarding both the Contempt Judgment and the denial of the Motion to Quash, we focus our discussion on the Contempt Judgment.[3] We divide our discussion into three parts: (1) the law of contempt; (2) Deltatech's arguments on appeal; and (3) the Streiffers' request for frivolous appeal damages.

---

[2] La. C.C.P. art. 2164 provides, in relevant part, that an appellate court "may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."

[3] In two assignments of error, Deltatech contends, essentially, that the trial court erred in denying the Motion to Quash because the Merits Judgment fails to apportion fault between Deltatech and Ms. Tomasetti, rendering the Merits Judgment unenforceable. This argument is unpersuasive for two reasons.

First, after full appellate review, the Merits Judgment is now final. To the extent Deltatech wishes to challenge the Merits Judgment, a motion to quash a judgment debtor examination is, as the trial court observed, not the proper procedure. *See Hernandez v. State, ex rel. Dep't of Transp. & Dev.*, 02-0162, p. 8 (La. App. 4 Cir. 10/16/02), 841 So.2d 808, 815 (observing that "there are three ways that a final judgment may be challenged: (1) timely application for a new trial, (2) petition for nullity, and (3) timely appeal") (citing *Webster v. Boh Bros. Construction Co., Inc.*, 603 So.2d 761, 763 (La. App. 4 Cir.1992)). As noted, Deltatech has already appealed the Merits Judgment; and the delay for applying for a new trial has lapsed. *See* La. C.C.P. art. 1974 (providing, in relevant part, that "[t]he delay for applying for a new trial shall be seven days"). Accordingly, the only means by which Deltatech can now challenge the merits judgment is a petition for nullity.

Second, when a limited liability company's corporate veil is pierced as to a particular member, the liability of the company and the member is, as a matter of law, solidary. *See ORX Res., Inc. v. MBW Expl., L.L.C.*, 09-0662, p. 12 (La. App. 4 Cir. 2/10/10), 32 So.3d 931, 938 (finding that, when the corporate veil is pierced, a member of a limited liability company "can be held personally liable jointly and solidarily with [the company]"). Thus, Deltatech and Ms. Tomasetti were solidarily liable to the Streiffers. Because Ms. Tomasetti was effectively dismissed as a defendant on the appeal of the Merits Judgment, Deltatech, as the sole remaining defendant, is liable to the Streiffers for the full amount of the judgment.

*The Law of Contempt*

A contempt of court is "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. C.C.P. art. 221. "The authority to punish for contempt of court falls within the inherent power of the court to aid in the exercise of its jurisdiction and to enforce its lawful orders." *In re Succession of Horrell*, 07-1533, p. 12 (La. App. 4 Cir. 10/1/08), 993 So.2d 354, 365 (quoting *de Nunez v. Bartels*, 97-1384, p. 13 (La. App. 1 Cir. 9/9/98), 727 So.2d 463, 470, in turn citing *In re Merritt*, 391 So.2d 440, 442 (La. 1980)) (internal quotation marks omitted). This is so because "[t]he power to punish contemptuous conduct is essential to the fair and efficient administration of justice and to the preservation of the dignity and authority of the courts." *In re Milkovich*, 493 So.2d 1186, 1188 (La. 1986) (citing *Wood v. Georgia*, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962), and *In re Masinter*, 355 So.2d 1288 (La. 1978)).

The law of contempt presents a double dichotomy—direct and constructive; civil and criminal. As one commentator put it:

> Contempts of court are classified according to two criteria. An act of contempt is either direct or indirect. Furthermore, a contempt proceeding is either civil or criminal. This creates four types of contempt: direct civil contempt, direct criminal contempt, indirect civil contempt, and indirect criminal contempt.

Paul A. Grote, *Purging Contempt: Eliminating the Distinction Between Civil and Criminal Contempt*, 88 WASH. U.L. REV. 1247, 1248 (2011). These dichotomies determine the procedure required to adjudicate a contempt. The direct-constructive dichotomy is governed by the alleged contumacious act; the civil-criminal dichotomy is governed by the punishment imposed. We separately address each dichotomy.

4

*The Direct-Constructive Dichotomy*

Direct contempt is either a contumacious act "committed in the immediate view and presence of the court and of which it has personal knowledge" or "a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." La. C.C.P. art. 222. A constructive contempt of court is any contempt other than a direct one. La. C.C.P. art. 224.

The procedures for adjudicating direct and constructive contempt are different. The reason for the difference is constitutional. As the United States Supreme Court explained in *In re Oliver*, 333 U.S. 257, 275-76, 68 S.Ct. 499, 508-09, 92 L.Ed. 682 (1948):

> Except for a narrowly limited category of contempts, due process of law as explained in [*Cooke v. United States*, 267 U.S. 517, 45 S. Ct. 390, 69 L. Ed. 767 (1925)] requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority before the public.' If some essential elements of the offense are not personally observed by the judge, so that [he] must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the *Cooke* case, that the accused be accorded notice and a fair hearing as above set out.

Consistent with these due process requirements, the Louisiana Legislature has codified the procedures for adjudicating direct and constructive contempts. The procedure for adjudicating a direct contempt is codified in La. C.C.P. art. 223 as follows:

A person who has committed a direct contempt of court may be found guilty and punished therefor by the court forthwith, without any trial other than affording him an opportunity to be heard orally by way of defense or mitigation. The court shall render an order reciting the facts constituting the contempt, adjudging the person guilty thereof, and specifying the punishment imposed.

By contrast, the procedure for adjudicating a constructive contempt is codified in

La. C.C.P. art. 225 as follows:

A. Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly. The rule to show cause may issue on the court's own motion or on motion of a party to the action or proceeding and shall state the facts alleged to constitute the contempt. A person charged with committing a constructive contempt of a court of appeal may be found guilty thereof and punished therefor after receiving a notice to show cause, by brief, to be filed not less than forty-eight hours from the date the person receives such notice why he should not be found guilty of contempt and punished accordingly. The person so charged shall be granted an oral hearing on the charge if he submits a written request to the clerk of the appellate court within forty-eight hours after receiving notice of the charge. Such notice from the court of appeal may be sent by registered or certified mail or may be served by the sheriff. In all other cases, a certified copy of the motion, and of the rule to show cause, shall be served upon the person charged with contempt in the same manner as a subpoena at least forty-eight hours before the time assigned for the trial of the rule.

B. If the person charged with contempt is found guilty the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed.

*The Civil-Criminal Dichotomy*

Determining whether a contempt proceeding is civil or criminal in nature is

often difficult.[4] Nonetheless, several guiding principles have emerged from the

---

[4] Indeed, as the United States Supreme Court has observed, "[a]lthough the procedural contours of the two forms of contempt are well established, the distinguishing characteristics of civil versus criminal contempts are somewhat less clear." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994). This is so because "[c]ontempts are neither wholly civil nor altogether criminal"; and, as a result, "'it may not

jurisprudence.[5] Ultimately, however, the dispositive inquiry is the nature of the punishment imposed—that is, whether the punishment is remedial or punitive. If remedial, the contempt is civil; if punitive, the contempt is criminal.[6] As the United States Supreme Court has observed:

---

always be easy to classify a particular act as belonging to either one of these two classes'" because "'[i]t may partake of the characteristics of both.'" *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911) (quoting *Bessette v. W. B. Conkey Co.*, 194 U.S. 329, 48 L.Ed. 1002 (1904)). The difficulty in distinguishing between civil and criminal contempt is compounded by the fact that "the 'civil' and 'criminal' labels of the law have become increasingly blurred." *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L. Ed. 2d 721 (1988).

[5] Those jurisprudential principles include the following: First, the nature of the underlying proceeding in which a contumacious act was committed is not dispositive of whether the contempt proceeding is itself civil or criminal in nature. *Cf* Paul A. Grote, *Purging Contempt: Eliminating the Distinction Between Civil and Criminal Contempt*, 88 WASH. U.L. REV. 1247, 1254 (2011) (observing that although "one might be tempted to think criminal contempt arises from criminal cases and civil contempt arises from civil cases . . . whether the underlying proceeding is civil or criminal is of no significance"); *but cf.* Frank L. Maraist, 1A LA. CIV. L. TREATISE, CIV. PROC. - SPECIAL PROCEED., § 11.2 Contempt, (2019 ed.) (observing that "[a] contempt committed in connection with a civil proceeding generally is treated as a civil contempt and is punished pursuant to the rules set forth in the Code of Civil Procedure and Title 13 of the Revised Statutes"). Second, labels affixed by the trial court either to the contempt proceeding or to the punishment imposed are not dispositive of whether the contempt is civil or criminal. *Hicks*, 485 U.S. at 631, 108 S.Ct. at 1429. Third, the trial court's subjective purpose in punishing the contempt, although germane, is not dispositive of whether the contempt is civil or criminal. *Hicks*, 485 U.S. at 635, 108 S.Ct. at 1431 (observing that "[a]lthough the purposes that lie behind particular kinds of relief are germane to understanding their character, this Court has never undertaken to psychoanalyze the subjective intent of a State's laws and its courts, not only because that effort would be unseemly and improper, but also because it would be misguided"); *but see Dauphine v. Carencro High Sch.*, 02-2005, pp. 14-15 (La. 4/21/03), 843 So.2d 1096, 1107-08 (observing that "[a] contempt of court proceeding is either criminal or civil, which is determined by what the court primarily seeks to accomplish by imposing sentence" and that "[i]n a criminal contempt proceeding, the court seeks to punish a person for disobeying a court order, whereas in a civil contempt proceeding, the court seeks to force a person into compliance with a court order") (citing *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) (internal citations omitted). Fourth, the mere fact that punishment is imposed is not dispositive of whether the contempt is civil or criminal. *Gompers* 221 U.S. at 441, 31 S.Ct. at 498.

[6] Even the application of this principle may prove difficult. As the United States Supreme Court has observed:

> "It is true that either form of [punishment] has also an incidental effect. For if the case is civil and the punishment is purely remedial, there is also a vindication of the court's authority. On the other hand, if the proceeding is for criminal contempt and the [punishment] is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of the disobedience."

7

[T]he critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." *Id.*, at 442, 31 S.Ct. at 498. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.

*Hicks*, 485 U.S. at 631-32, 108 S.Ct. at 1429.

The distinction between criminal and civil contempt is determinative of the procedural safeguards required by the federal constitution. "Criminal contempt is a crime in every fundamental respect, and the defendant in a criminal contempt proceeding is entitled to the basic constitutional protections such as the presumption of innocence, the right to proof of guilt beyond a reasonable doubt, and the right not to be compelled to testify against himself." *In re Milkovich*, 493 So.2d 1186, 1189 (La. 1986) (citing *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968)).[7]

---

*Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 635-36, 108 S.Ct. 1423, 1431-32, 99 L.Ed.2d 721 (1988) (quoting *Gompers*, 221 U.S. at 443, 31 S.Ct. at 498) (alterations in original); *see also Bagwell*, 512 U.S. at 828 (noting the overlap between civil and criminal contempt sanctions).

[7] Various other procedural safeguards are also required in a criminal contempt proceeding. *See, e.g.*, *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943) (double jeopardy); *Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925) (rights to notice of charges, assistance of counsel, and to present a defense); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. at 444, 31 S.Ct. at 499 (privilege against self-incrimination, right to proof beyond a reasonable doubt); *Bloom*, 391 U.S. at 199, 88 S.Ct. at 1481 (the right to trial by jury for "serious" criminal contempts involving imprisonment of more than six months).

By contrast, few of the procedural safeguards required in a criminal contempt proceeding are required in a civil contempt proceeding. As in other civil cases, a civil contemnor is entitled only to notice and an opportunity to be heard; and the burden of proof is by a preponderance of the evidence. *Bagwell*, 512 U.S. at 827, 114 S.Ct. at 2557 (observing that, "[i]n contrast [to criminal contempt sanctions], civil contempt sanctions . . . may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard" and that, thus, "[n]either a jury trial nor proof beyond a reasonable doubt is required.").[8]

Regardless of the type of contempt—direct or constructive; civil or criminal—a trial court has great discretion in deciding whether to find someone in contempt. *Kirschman v. Kirschman*, 12-0385, p. 2 (La. App. 4 Cir. 12/28/12), 109 So.3d 29, 31 (citing *City of Kenner v. Jumonville*, 97-125, 97-210, 97-602 (La. App. 5 Cir. 8/27/97), 701 So.2d 223, and *Reeves v. Thompson*, 95-0321 (La. App. 4 Cir. 12/11/96), 685 So.2d 575). Nonetheless, "a trial court's predicate factual determinations are reviewed under the manifest error standard in the case of a civil contempt, and under the standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the case of a criminal contempt." *Rogers v. Dickens*, 06-0898, p. 7 (La. App. 1 Cir. 2/9/07), 959 So.2d 940, 945 (citing *In re Milkovich*, 493 So.2d at 1189). If the evidence is sufficient, a finding of contempt will be reversed only when the appellate court can discern an abuse of the trial court's discretion. *See Fontana v. Fontana*, 13-0916, p. 24 (La. App. 4 Cir. 2/12/14), 136 So.3d 173, 188 (quoting *Smith v. Pillow-Smith*, 10-0167, p. 3 (La.

---

[8] Indeed, even these few procedural safeguards are required only in a proceeding for a constructive civil contempt. *Id.*, 512 U.S. at 827, 114 S. Ct. at 2557 (noting that the civil procedural protections were limited to constructive contempts because "direct contempts that occur in the court's presence may be immediately adjudged and sanctioned summarily").

App. 4 Cir. 11/17/10), 52 So.3d 264, 267 (in turn citing *Stephens v. Stephens*, 30,498, p. 5 (La. App. 2 Cir. 5/13/98), 714 So.2d 115, 118)).

*Deltatech's Arguments on Appeal*

Deltatech contends that, because the contempt proceeding was initiated by the Streiffers' motion, the contempt proceeding was constructive and that, because the motion failed to satisfy the requirements of La. C.C.P. art. 225, Deltatech was denied due process. We disagree.

Whether a contempt proceeding is direct or constructive, and, thus, what procedure is required, is governed by the allegedly contumacious act—not the manner in which the contempt proceeding is initiated.[9] *See* Hon. Billie Colombaro, *et al.*, La. Prac. Civ. Trial Proc. § 2:127 (2019) (observing that it is "[t]he nature of the alleged contempt [that] controls the procedure to be applied in determining

---

[9] As the United States Supreme Court explained in *Cooke, supra*, 267 U.S. at 536-37, 45 S.Ct. at 394-95:

> We think the distinction [between the procedural requirements of direct and constructive contempt proceedings] finds its reason, not any more in the ability of the judge to see and hear what happens in the open court than in the danger that, unless such an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public in the "very hallowed place of justice," as Blackstone has it, is not instantly suppressed and punished, demoralization of the court's authority will follow. Punishment without issue or trial was so contrary to the usual and ordinarily indispensable hearing before judgment constituting due process that the assumption that the court saw everything that went on in open court was required to justify the exception; but the need for immediate penal vindication of the dignity of the court created it.

> When the contempt is not in open court, however, there is no such right or reason in dispensing with the necessity of charges and the opportunity of the accused to present his defense by witnesses and argument.

> \* \* \*

> Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed.

whether one is guilty of contempt and determining the punishment if one is found guilty"); *see also* Gale Dalton Schlosser, LA. PRAC. CRIM. TRIAL PRAC., § 27:3 (4th ed. 2020) (observing that "[d]irect contempts do not have to be adjudicated summarily").

In this case, Deltatech's contumacious act—failure to appear pursuant to a subpoena[10]—is a direct contempt.[11] *See* La. C.C.P. art. 223 (defining direct contempt, in part, as a "contumacious failure to comply with a subpoena or summons, proof of service of which appears of record"). That the direct contempt proceeding was initiated by the Streiffers' motion is of no moment.

Deltatech next contends that the Contempt Judgment is a finding of criminal contempt, the elements of which were not proven beyond a reasonable doubt. We disagree. We find the contempt was civil, not criminal.[12] Given the numerous and protracted delays caused by Deltatech over the course of this litigation—including Deltatech's failure to appear for judgment debtor examination on two occasions—we find that the trial court's judgment holding Deltatech in contempt sought to force Deltatech to comply with the trial court's future orders to appear. Additionally, the punishment imposed on Deltatech was limited to compensating the Streiffers for their attorney's fees and costs incurred in connection with the June 21 setting at which the judgment debtor examination could not proceed due to

---

[10] Deltatech does not contend that Ms. Tomasetti was not subpoenaed to appear. To the contrary, in brief and at oral argument, Deltatech conceded that Ms. Tomasetti was subpoenaed to appear.

[11] Deltatech does not contend that the procedure employed by the trial court in finding it in direct contempt failed to comport with the requirements of La. C.C.P. art. 222. Nonetheless, we note that, before entering the Contempt Judgment, the trial court afforded Deltatech an opportunity to be heard in defense or mitigation through its counsel. At that time, and in subsequently issued written reasons for judgment, the trial court recited the facts constituting the contempt—that Ms. Tomasetti had failed to appear despite being subpoenaed. We find no defect in this procedure.

[12] On appeal, Deltatech failed to brief this issue. Instead, Deltatech merely asserted that the contempt was criminal.

11

Ms. Tomasetti's failure to appear on behalf of Deltatech.[13] *Accord Int'l Union,*

*United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829, 114 S.Ct. 2552, 2558,

129 L.Ed.2d 642 (1994) (observing that a contempt fine is considered remedial,

and thus civil, "if it either 'coerces the defendant into compliance with the court's

order, or compensates the complainant for losses sustained.'" (quoting *U.S. v. Mine*

*Workers*, 330 U.S. 258, 303-04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947))

(alterations omitted).

We further find that there was sufficient evidence to permit the trial court to

hold Deltatech in civil contempt. In its reasons for judgment, the trial court made

the following factual findings in support of the Contempt Judgment:

> [O]n April 24, 2019 Plaintiffs filed [the Judgment Debtor Motion], which was set for hearing on May 24, 2019. Defendant Deltatech filed a Motion to Quash on May 17, and was received by this Court on May 21 (it should be noted that Deltatech did not file an opposition to the Judgment Debtor [Motion], which would have been the appropriate vehicle to challenge the motion). The Motion to Quash was set on May 24 to coincide with the Judgment Debtor [Motion]. Counsel for Deltatech, Karl Guilbeau, sent an email on May 23 to a member of the Court's staff with the following language:

>> Regarding the judgment debtor rule set for hearing tomorrow, May 24, in Streiffer v. Deltatech, I have advised my client, Sandra Tomasetti, that Deltatech Construction's [M]otion to [Q]uash the [J]udgment [D]ebtor [Motion] relieves Ms. Tomasetti of the legal obligation to appear as member manager of Deltatech and until such time as there is final judgment on the [M]otion to [Q]uash. I notify you because my reading of the Streiffers' opposition motion filed today is that they urge the opposite of my advice to my client. Reiterating, Ms. Tomasetti's absence from court in the morning is upon advice of legal counsel.

> On the morning of the hearing, both Tomasetti and Guilbeau failed to appear for the Judgment Debtor Examination and the Motion to Quash. Counsel for Plaintiffs contemporaneously filed a Motion for

---

[13] The trial court noted that it "gave [Deltatech] a pass" as to the Streiffers' attorney's fees and costs incurred in connection with Ms. Tomasetti's failure to appear at the May 24th setting.

Contempt based on these absences. In a subsequently filed motion to reset, Mr. Guilbeau asserted that he had not received notice that his Motion to Quash was set for May 24. Both motions were reset for hearing on June 21, 2019. The Court also set the Motion for Contempt on June 21.

At the hearing on June 21, this Court denied Deltatech's Motion to Quash, finding that the Judgment rendered against Deltatech was a final and enforceable judgment. This Court attempted to turn its attention to the [Judgment Debtor Motion]; Counsel for Defendant informed the Court that he had instructed his client yet another time not to appear (despite a valid notice).[14] This Court granted the Motion for Contempt in open court. The Court explained to counsel for Deltatech that, notwithstanding his objection to the [J]udgment Debtor Motion], the Judgment Debtor [Motion] was set for hearing and Defendant received valid notice. Counsel for Deltatech voiced his opinion that his client was not legally required to appear until the [M]otion to [Q]uash was ruled upon. The Court explained that this opinion was erroneous; the Judgment Debtor [Motion] was not continued without date, but rather reset for June 21. If the [M]otion to [Q]uash had been granted, Deltatech's presence would certainly not have been required. However, because the [M]otion [to Quash] was denied, the Judgment Debtor [Motion] was properly before the Court and scheduled to go forward.[15] The Court attempted to explain this fact numerous times but counsel for Deltatech did not understand the Court's ruling. The Court found Deltatech in contempt of court based on the fact that it failed to appear for hearing on two separate occasions despite valid notice (May 24 and June 21).

---

[14] We note that Deltatech's counsel's instruction not to appear is no defense to the contempt proceeding. *State ex rel. Collins v. Collins*, 110 So.2d 545, 550 (La. 1959) (observing that "[t]he fact that [the contemnors] acted on advice of counsel does not provide them with a legal excuse"); *see also* 17 C.J.S. Contempt § 64 (observing that "[t]he fact that a contemnor acted under the advice of counsel is generally no defense to a proceeding for contempt").

[15] In answering the trial court, Deltatech's counsel indicated he believed that, if the trial court denied the Motion to Quash, Deltatech would be entitled to a suspensive appeal—meaning that, even if the motion were denied, the judgment debtor examination could not go forward on the same day. As the trial court correctly noted, counsel's belief was incorrect. As discussed elsewhere in this opinion, a motion to quash is not a procedurally proper response to a motion to examine a judgment debtor. Such a pleading is effectively an opposition, and no appeal—suspensive or devolutive—lies from its denial. At most, Deltatech could have given notice of its intent to seek supervisory review and sought a stay; but the issuance of that stay, whether from the trial court, this court, or the Louisiana Supreme Court, would have been a matter of the courts' discretion—not a matter of Deltatech's right. Moreover, the correctness of counsel's belief is irrelevant. Ms. Tomasetti was subpoenaed, as the managing member of Deltatech, to appear for examination. As previously discussed, the advice of counsel—correct or incorrect—is no defense to a contempt based on the failure to honor a court order, including a subpoena to appear.

These facts are supported by the record and are sufficient to support the Contempt Judgment. *See* La. C.C.P. art. 2456 (providing that, if a judgment debtor has been served with an order setting a judgment debtor examination and refuses to appear, the judgment debtor may be punished for contempt); *see also, e.g.*, *Too Easy Entm't, LLC v. Seven Arts Pictures, Inc.*, 06-0015, p. 6 (La. App. 4 Cir. 9/20/06), 943 So.2d 1194, 1197 (finding that, because a judgment debtor was "properly served with orders setting [a judgment debtor examination]" and "failed to adhere to the orders and appear for the [examination], the trial court had full discretion to punish them").

Nonetheless, Deltatech contends that there was insufficient evidence to support the contempt judgment for two reasons: (i) the subpoena was directed to Ms. Tomasetti, not Deltatech; and (ii) Deltatech did not have the specific intent to violate the trial court's subpoena. Neither of these arguments is persuasive.

*Person Subpoenaed*

It is well settled that a corporate entity, such as a limited liability company, may be held in contempt for the actions of its members and representatives. *See Harley-Davidson Credit Corp. v. Davis*, 13-214, p. 7 (La. App. 3 Cir. 11/6/13), 127 So.3d 50, 55 (observing that "a corporation may be found in contempt for the actions of its members or representatives") (citing *Pettus v. Atchafalaya Wildlife Protective Soc.*, 351 So.2d 790 (La. App. 1st Cir. 1977)); *see also* 10A Fletcher Cyc. Corp., § 5069 (2020) (observing that "a corporation may be found in contempt for the actions of its members or representatives") (citing *Patrick by &*

*through Patrick v. J. Patrick, Inc. Mach., Pump & Fabrication*, 17-0050 (La. App.

1 Cir. 11/1/17), 233 So.3d 82; *Harley-Davidson Credit Corp., supra*).[16]

In this case, as the trial court's order setting the May 24, 2019 judgment

debtor examination makes clear, Ms. Tomasetti was ordered to appear not in her

personal capacity but as "the Manager of Deltatech Construction, LLC." Thus, Ms.

Tomasetti's failure to appear is imputable to Deltatech.[17]

*Specific Intent*

As previously discussed, this was a civil, not a criminal, contempt; thus,

evidence of specific intent was not required. *McComb v. Jacksonville Paper*

*Company*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1948) (holding that

willfulness is not an element of civil contempt). As the Court explained in

*McComb*:

> The absence of willfulness does not relieve from civil
> contempt. Civil as distinguished from criminal contempt is a sanction
> to enforce compliance with an order of the court or to compensate for

---

[16] As one commentator has observed:

> Corporations obey subpoenas through their agents having knowledge of
> the law's process directed to the corporation and its officers. And it is to agents,
> and agents alone, that the law looks for compliance with its process directed at the
> corporation. Corporate agents are representatives acting on behalf of the
> corporation. They disobey in an individual capacity and may be held in contempt,
> with their disobedience imputed to the corporation which will also be held in
> contempt.

Lawrence N. Gray, Esq., *A Practice Commentary to Judiciary Law Article 19*, 1 CARDOZO PUB.
L. POL'Y & ETHICS J. 61, 89-90 (2003) (citations omitted).

[17] The issue of whether the trial court's order—directed to Ms. Tomasetti not in her personal
capacity but as Deltatech's managing member—was formally proper is not before us; at no time
did Deltatech or Ms. Tomasetti move to quash the trial court's order on that basis. In any event,
the trial court's order to Ms. Tomasetti was proper. *See* La. C.C.P. art. 1433 (providing that "[i]n
aid of execution of the judgment, the district court in which the judgment was rendered may,
upon motion of the judgment creditor, allow the taking of a third person's deposition").
Moreover, as a practical matter, a limited liability company is a juridical person; it can neither
appear nor testify except through an agent. The trial court—after presiding over this case for six
years, including a trial on the merits—reasonably concluded that Ms. Tomasetti, as Deltatech's
managing member (and former co-defendant), was the person best situated to testify on
Deltatech's behalf to the information sought by the Streiffers.

15

losses or damages sustained by reason of noncompliance. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.

336 U.S. at 191, 69 S.Ct. at 499 (internal citations omitted). Thus, whether Deltatech had the specific intent to violate the trial court's subpoena is irrelevant.[18]

*The Streiffers' Request for Frivolous Appeal Damages*

Contending that Deltatech's appeal is frivolous, the Streiffers seek frivolous appeal damages in the form of attorney's fees and costs incurred in connection with this appeal. This court, in *Johnson v. Johnson*, 08-0060, pp. 5-6 (La. App. 4 Cir. 5/28/08), 986 So.2d 797, 801, set forth the governing principles for frivolous appeal damages as follows:

---

[18] Deltatech contends not only that Deltatech did not have the specific intent to violate the trial court's subpoena but also that Deltatech—a non-sentient juridical person—could not form such intent. In support, Deltatech relies on *State v. Chapman Dodge Ctr., Inc.*, 428 So.2d 413 (La. 1983). There, the Louisiana Supreme Court considered whether a corporation could be held criminally liable for a specific-intent crime committed, without authorization, by an officer or manager. In framing the issue, the court observed the following:

> When a corporation is accused of committing a crime which requires intent, it must be determined who within the corporate structure had the intent to commit the crime. If the crime was the product of a board of directors' resolution authorizing its employees to commit specific criminal acts, then intent on the part of the corporation is manifest. However, a more difficult question arises if the crime is actually committed by an employee of the corporation not authorized to perform such an act. Holding a corporation criminally responsible for the acts of an employee may be inconsistent with basic notions of criminal intent, since such a posture would render a corporate entity responsible for actions which it theoretically had no intent to commit.

*Id.* at 417. In considering the issue, the court acknowledged that "[c]ommon law jurisdictions hold corporations criminally liable for the acts of low-ranking employees," noting that, "[i]n such jurisdictions, corporate criminal liability is based on an extension of the tort doctrine of vicarious liability." *Id.* at 417-18. The court observed, however, that "this merger of tort and criminal law doctrine has found wide acceptance, it has also generated significant theoretical problems." *Id.* at 418. After discussing these problems in detail, the court stopped short of resolving the issue. "While recognizing the potential disservice to the jurisprudence," the court determined that is was "unable, within the confines of th[at] appeal, to resolve these extremely complex issues." *Id.* at 419. Instead, the court "simply determine[d] that under the circumstances of this case, criminal intent ha[d] not been adequately established," thus resolving the case on its facts while leaving the legal question open. *Id.* at 419-20. Because we find that this was a civil, not a criminal, contempt, we need not resolve the issue left open in *Chapman Dodge. But see Fox v. Fox*, 49,619 (La. App. 2 Cir. 4/22/15), 164 So.3d 359 (affirming a judgment of criminal contempt against a limited liability company for the failure to obey the trial court's order to produce documents in discovery).

16

Appellate courts "shall render any judgment which is just, legal, and proper upon the record on appeal" and "may award damages for frivolous appeal. . . ." La. C.C.P. art. 2164. The statute permitting frivolous appeal damages must be strictly construed in favor of the appellant, as it is penal in nature. *Levy v. Levy*, 02-0279, pp. 17-18 (La. App. 4 Cir. 10/2/02), 829 So.2d 640, 650. Frivolous appeal damages will be awarded if the appellant is trying to "delay the action" or "if the appealing counsel does not seriously believe the law he or she advocates." *Hester v. Hester*, 97-2009, p. 5 (La. App. 4 Cir. 6/3/98), 715 So.2d 43, 46. An appeal may also be deemed frivolous if it does not present a "substantial legal question." *Tillmon v. Thrasher Waterproofing*, 00-0395, p. 8 (La. App. 4 Cir. 3/28/01), 786 So.2d 131, 137. "Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be granted" due in part to the possible chilling effect on the appellate process. *Tillmon*, 00-0395, p. 8.786 So.2d at 137.

In *Miralda v. Gonzalez*, 14-0888, pp. 33-34 (La. App. 4 Cir. 2/4/15), 160 So.3d 998, 1019, this court expanded on these principles as follows:

Although a successful appeal is by definition non-frivolous, the converse is not true. *Haney v. Davis*, 04-1716, p. 11 (La. App. 4 Cir. 1/19/06), 925 So.2d 591, 598. Even when an appeal lacks serious legal merit, frivolous appeal damages will not be awarded unless the appeal was taken solely for the purpose of delay or the appellant's counsel is not serious in the position he advances. *Dugas v. Thompson*, 11-0178, p. 15 (La. App. 4 Cir. 6/29/11), 71 So.3d 1059, 1068 (citing *Elloie v. Anthony*, 95-0238, p. 3 (La. App. 4 Cir. 8/23/95), 660 So.2d 897, 899); *see also Hardy v. Easy T.V. and Appliances of Louisiana, Inc.*, 01-0025, p. 9 (La. App. 4 Cir. 12/12/01), 804 So.2d 777, 782; *Sherman for and on Behalf of Magee v. B & G Crane Service*, 455 So.2d 1275, 1278 (La. App. 4th Cir.1984).

Any doubt regarding whether an appeal is frivolous must be resolved in the appellant's favor. *City of Ruston v. Perritt*, 30,896, p. 13 (La. App. 2 Cir. 9/23/98), 718 So.2d 1044, 1052; *see also Troth Corp. v. Deutsch, Kerrigan & Stiles, L.L.P.*, 06-0457, p. 5 (La. App. 4 Cir. 1/24/07), 951 So.2d 1162, 1166.

Applying these principles, we cannot say that Deltatech's appeal is frivolous. Accordingly, we deny the Streiffers' request for frivolous appeal damages.

## **DECREE**

For the foregoing reasons, the trial court's judgment is affirmed. The

Streiffers' request for frivolous appeal damages is denied.

**AFFIRMED; REQUEST FOR FRIVOLOUS APPEAL DAMAGES
DENIED**