RENDERED: JANUARY 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0102-MR

BRANDI CAFFEE                                         APPELLANT

                  APPEAL FROM JEFFERSON CIRCUIT COURT
v.               HONORABLE HUGH SMITH HAYNIE, JUDGE
                  ACTION NO. 17-CI-502402

CHRISTOPHER WATERS AND L.W.,
A MINOR CHILD                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: DIXON, KRAMER, AND LAMBERT, JUDGES.

KRAMER, JUDGE: Brandi Caffee ("Mother") appeals from an order of the Jefferson Circuit Court finding her in contempt of the parties' court-ordered visitation schedule and sentencing her to seven days' incarceration. We affirm.

**Factual and Procedural Background**

        Christopher Waters ("Father") filed a petition to establish custody and parenting time of the parties' minor child ("Child") in August 2017. There was

also a separate paternity action pending before the family court at the time. A visitation schedule had been put into place in that action.[1] One month later, Father filed his first motion to hold Mother in contempt, alleging that she refused to follow the court-ordered visitation schedule. Before the motion was heard by the family court, Father filed a supplemental affidavit indicating that Mother had refused more visitation since his motion was filed and that he had not seen Child in three months. He also filed a motion asking the family court to order the sheriff to accompany him to pick up Child for his visitation. Mother did not appear for the hearing on Father's motions. The family court ordered temporary custody of Child to Father and suspended Mother's parenting time until she appeared before the family court. The order warned Mother that failure to follow orders of the family court could result in up to six months in jail and/or a $500.00 fine.

The following month, the parties agreed to a parenting schedule, and Father's motion for contempt was remanded. The parties entered several agreed orders changing the parenting schedule throughout 2018, the last one being in December 2018. On this agreed order, the family court added, "THIS ORDER MUST BE FOLLOWED. CONTEMPT CARRIES UP TO SIX MONTHS IN JAIL." Just a few weeks later, Father filed a motion for contempt, again alleging that Mother refused to follow the schedule and denied him visitation with Child.

---

[1] Jefferson County Case No. 17-J-500762.

The family court entered an order on April 9, 2019, which found, in relevant part, that Mother's behavior at that point did not rise to the level of contempt. In issuing other orders, the family court again reminded the parties of the possible penalties of incarceration and/or a fine for failure to follow court orders.

The parties were before the family court again in August 2019. At that time, the family court entered a civil restraining order preventing Mother from (1) any acts of abuse or threats against Father and (2) any contact or communication with Father. At that time, a week-on week-off parenting schedule was ordered by the family court. Less than one month later, Father filed another motion for contempt, alleging that Mother was once again refusing his visitation with Child. Father sought a penalty of 180 days' incarceration for Mother's failure to obey orders of the family court. Mother's attorney filed a response stating that her attorney of record was out of the country and that stand-in counsel was in St. Louis, Missouri, for a prior commitment. Mother did not appear at motion hour. The family court entered an order setting an emergency contempt hearing for the following day. The order also stated, "CONTEMPT CARRIES UP TO 6 [MONTHS] IN JAIL" and "[MOTHER] MUST FOLLOW [COURT] ORDERS."

Mother did not appear for the emergency contempt hearing the following day; however, she was represented by counsel. The family court stated that Father's motion would not normally be considered an emergency. However,

the family court pointed out the numerous and ongoing court appearances by the parties, including Father's recent attempt to obtain an emergency protective order, and Mother's "never ending" allegations to the Cabinet for Health and Family Services ("CHFS") and subsequent investigations. Mother's counsel requested a continuation, but the family court denied her request and proceeded with the hearing.[2]

Father testified regarding his missed visitation with Child, and Mother's counsel cross-examined Father. Child's guardian *ad litem* ("GAL") also questioned Father. Mother's counsel did not call any witnesses on Mother's behalf. The family court initially ruled from the bench that it was finding Mother in civil contempt and ordered her to serve seven days' incarceration. However, if Mother complied with all scheduled visitation prior to the family court's next motion hour, the court would reconsider imposition of the sentence. Child's GAL and Father's counsel voiced their concerns and argued that if Mother did not face serious consequences, the parties would soon be before the court again. Father's counsel asked for a bench warrant and argued that Mother had been given too many chances. After a short recess, the family court issued a bench warrant and

---

[2] There was a question by the family court and counsel as to whether there was an active investigation by CHFS in regard to Mother's most recent allegations against Father and whether a safety plan was in place. It appears from the record before us that family court staff reached out to CHFS during the hearing and confirmed that no safety plan was in place and the investigation was closed. Father also testified that he had never seen paperwork saying he could not visit Child, nor had CHFS contacted him and, to his knowledge, there was no investigation.

ordered Mother to serve seven days' incarceration for contempt. An order was entered on October 3, 2019. Father was given temporary custody of Child.

Mother filed a motion to alter, amend, or vacate the family court's order, arguing, in part, that Mother's penalty was criminal contempt, not civil, and that Mother had not been afforded due process. The family court amended its order to find Mother in criminal contempt, beyond a reasonable doubt, but otherwise denied Mother's requested relief. This appeal followed.

**Standard of Review**

We review the family court's exercise of its contempt powers for abuse of discretion, *Lewis v. Lewis*, 875 S.W.2d 862, 864 (Ky. 1993). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Sexton v. Sexton,* 125 S.W.3d 258, 272 (Ky. 2004) (citation omitted). We further note that the family court has broad authority to enforce its orders, and contempt proceedings are part of that authority. *Lewis,* 875 S.W.2d at 864.[3]

_____

[3] We are mindful that the Kentucky Supreme Court has stated that "[a]ppellate review of criminal contempt sanctions should be commensurate with the review provided in regular criminal cases of a comparable seriousness, as suggested by the penalties imposed." *Cabinet for Health and Family Services v. J.M.G.*, 475 S.W.3d 600, 624 (Ky. 2015). Although it is unclear what is meant by the "review provided in regular criminal cases[,]" other than the requirement of proof beyond a reasonable doubt, we note that the punishment was not as "substantial" as those contemplated by the high court in *J.M.G.* Therefore, we see no reason to deviate from applying the abuse of discretion standard in the case at bar. *See, e.g., Meyers v. Petrie*, 233 S.W.3d 212 (Ky. App. 2007) (this Court reviewed a penalty of 181 days' incarceration for contempt under the abuse of discretion standard).

## Analysis

We first note that Father did not file an appellee brief, nor was an appellee brief filed by the GAL on behalf of Child. When a responsive brief has not been filed, the Court may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if the appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case. CR[4] 76.12(8)(c). "The decision as to how to proceed in imposing such penalties is a matter committed to our discretion." *Cabinet for Health and Family Services v. Loving Care, Inc.*, 590 S.W.3d 824, 826 (Ky. App. 2019) (quoting *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007)). Given the nature of the underlying action and the fact that this matter may be decided based upon the law and the undisputed evidence of record, we exercise our discretion to not impose any penalties herein; however, we do caution that such leniency may not be extended in the future.

Mother's first two arguments focus on what she perceives as a lack of due process. Mother also argues that the family court erred in "its determination that the violation of the parenting time order was sufficiently culpable to be

---

[4] Kentucky Rules of Civil Procedure.

sanctioned as contempt" or, in the alternative, that the court erred in finding there was sufficient proof of willful or intentional disobedience of its order.[5]

The distinctions between civil and criminal contempt have been thoroughly reviewed by this Court and the Kentucky Supreme Court.

> Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court. Contempt can be classified as civil or criminal. Civil contempt is when someone fails to follow a court order to do something. That something is usually for the benefit of a party litigant (*e.g.*, pay child support, allow visitation, fix something by a certain date, move a driveway, clean up a spill, close a business by a certain hour, provide discovery, etc.). A judge may incarcerate someone for civil contempt in order to motivate the person to obey the court order, but the contemptuous one is entitled to be released upon compliance with the court's order. Criminal contempt, on the other hand, is when a person disobeys a court order out of disrespect for the rules or orders of court. A contemptuous person can be incarcerated for criminal contempt; but unlike civil contempt, the primary purpose of criminal contempt is to punish the contemptuous conduct.

> Criminal contempt can be either direct or indirect. A direct contempt is committed in the presence of the court and is an affront to the dignity of the court. It may be punished summarily by the court, and requires no fact-finding function, as all the elements of the offense are matters within the personal knowledge of the court. *In re Terry*, 128 U.S. 289, 9 S. Ct. 77, 32 L. Ed.

---

[5] Mother also argues that the matter is not moot simply because she has served her sentence. Because we address the merits of Mother's other arguments, we agree that the matter is not moot and will not further address the issue of mootness.

405 (1888). Indirect criminal contempt is committed outside the presence of the court and requires a hearing and the presentation of evidence to establish a violation of the court's order. It may be punished only in proceedings that satisfy due process. *Cooke v. United States,* 267 U.S. 517, 45 S. Ct. 390, 69 L. Ed. 767 (1925).

*Gormley v. Judicial Conduct Commission*, 332 S.W.3d 717, 725-26 (Ky. 2010)

(internal quotation marks and footnotes omitted).

Mother's actions were indirect and, because the penalty imposed by the family court did not afford her the opportunity to comply with the family court's order, the sanction was criminal in nature. Accordingly, the proceedings must satisfy due process. Mother claims she was denied due process, in part, because the family court failed to appoint "someone else to prosecute the case." We disagree. The family court was well within its authority to engage in contempt proceedings.

That those accused of indirect or serious direct criminal contempts are entitled to "full criminal process" does not mean, the United States Supreme Court has explained, that "any prosecution of contempt must now be considered an execution of the criminal law in which only the Executive Branch may engage." *Young*, 481 U.S. at 799-800, 107 S. Ct. 2124.[6] On the contrary, lest the judicial power be reduced to "'a mere mockery,'" it has long been deemed essential that the Judiciary have "a

---

[6] *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987).

means to vindicate its own authority without complete dependence on other Branches." *Young*, 481 U.S. at 796, 107 S. Ct. 2124 (quoting *Gompers*, 221 U.S. at 450, 31 S. Ct. 492).[7] Contempt proceedings are that means, and accordingly, "[c]ourts cannot be at the mercy of another Branch in deciding whether such proceedings should be initiated." *Id.*

*J.M.G.*, 475 S.W.3d at 612.

Mother alleges at least eight other reasons why she was denied due process. Rather than address each allegation individually, we look to the due process requirements in contempt proceedings to decide the matter.

Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed.

*Cooke*, 267 U.S. at 537, 45 S. Ct. at 395.

With those guideposts in mind, Mother's arguments quickly fall part. We will, nonetheless, briefly discuss them.

Mother asserts that the family court failed to give adequate notice of the contempt proceedings. This is unsupported by the record. It is undisputed that the family court had previously entered an order regarding the parties' visitation

---

[7] *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S. Ct. 492, 55 L. Ed. 797 (1911).

schedule with Child. It is also undisputed that Mother received Father's motion for contempt setting the motion to be heard on September 30, 2019. The motion detailed the dates that Mother failed to comply with the family court's order. Mother failed to appear at the motion hour when Father's motion was called. The family court set an emergency hearing for the following day, and Mother does not dispute the family court's finding that she knew of the hearing. The order setting the emergency hearing, as well as numerous orders previously entered by the family court, warned that failure to comply with court orders could result in incarceration and/or a fine. Mother was given the opportunity to be heard at the emergency hearing, but she again failed to appear and now argues she was denied due process. We are not persuaded. Mother was represented by counsel[8] at the contempt hearing, who did have the opportunity to cross-examine Father and call witnesses, although none were called on Mother's behalf. Accordingly, due process requirements were met, and the family court did not abuse its discretion.

Mother next argues that there was insufficient evidence that she willfully violated the family court's order. We disagree.

> We have construed "willful" in the contempt context to mean not merely knowing but intentional, and the difference is along the lines of a conscious purpose to

---

[8] We note the record also shows that the family court appointed a public defender to represent Mother in a prior contempt hearing when she was unrepresented by counsel and facing incarceration as a penalty.

disobey the authority of the court. The disobedience may be reluctant, polite, and regretful, as it appears to have been in *Poindexter*[9] ("[T]here need not be a showing of malice or disrespect in order for a trial court to hold an attorney in criminal contempt." 389 S.W.3d at 118), or it may be openly defiant, as it was in *Norton v. Commonwealth*, 37 S.W.3d 750, 754 (Ky. 2001) (After being found guilty, "[a]ppellant erupted in what he now modestly describes as an 'emotional outburst.' "), but to be contemptuous the violation of a duty must involve a duty the court meant to enforce.

*J.M.G.*, 475 S.W.3d at 620.

Mother argues that, by withholding Father's court-ordered visitation, she was "trying to protect her child" during an ongoing investigation by CHFS.[10] The record does not support this allegation. In its order, the family court noted that it was "very familiar with [Mother's] extensive history of denying [Father] his parenting time and her numerous unsubstantiated claims to [CHFS] that [Father] has sexually abused [Child]." This is borne out by the record before us.[11] Father filed at least four motions for contempt against Mother for denying his parenting time with Child. Although this was the first finding of contempt against Mother by

---

[9] *Poindexter v. Commonwealth*, 389 S.W.3d 112 (Ky. 2012).

[10] We generously treat this argument as preserved because, although objected to by Father, Mother's counsel did attempt to explain the reason why Mother withheld Father's visitation to the family court. As previously stated in this Opinion, there was an extensive discussion by the family court and counsel prior the outset of the emergency hearing regarding whether there was (1) an active investigation by CHFS and (2) a safety plan in place.

[11] The records of the paternity action and the domestic violence petitions are not before us. Likewise, the record before us does not contain documentation from any investigation by CHFS.

the family court, she was warned on each occasion that violation of any order could result in jail time and/or a fine. Rather than appear before the family court and present the defense she now argues to this Court, Mother simply failed to appear. We find no error in the family court's conclusion that Mother willfully violated the visitation order.

## Conclusion

For the reasons stated herein, we hold that Mother was afforded due process in the contempt proceedings and that the family court did not commit error therein. Accordingly, we affirm the Jefferson Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO APPELLEE BRIEF FILED

Mary Stewart Tansey
Louisville, Kentucky