COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Chief Judge Decker, Judges O'Brien and Causey
Argued at Lexington, Virginia

RAYMOND CHARLES BELL

OPINION BY
v.     Record No. 1045-23-3     JUDGE DORIS HENDERSON CAUSEY
AUGUST 13, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

Paul G. Beers (Glenn, Feldman, Darby & Goodlatte, on brief), for
appellant.

Ryan Beehler, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

On March 20, 2023, a Roanoke County jury convicted Raymond Charles Bell of brandishing a firearm. On March 31, 2023, the trial court summarily found Bell in contempt under Code § 18.2-456(A)(1) and (3) for sending a letter to members of the venire panel following the firearm conviction. A jury different from the one that convicted him of the brandishing offense subsequently fixed Bell's sentence for contempt at six months' incarceration. By final order of June 16, 2023, the trial court imposed the jury's recommended sentence.[1]

On appeal, Bell contends that the trial court erred by summarily holding him in contempt because his alleged conduct did not satisfy the requirements of Code § 18.2-456(A)(1) or (3).

---

[1] After the trial court found Bell in summary contempt but before the contempt sentencing hearing, it sentenced him to 12 months' incarceration with 5 months suspended on the underlying brandishing count.

We agree, and for the following reasons, we reverse the trial court's summary contempt order and remand for further proceedings consistent with this opinion.

BACKGROUND

In 2020, the Commonwealth charged Bell with misdemeanor brandishing. On March 20, 2023, a jury convicted him of that offense, and the trial court discharged the jury the same day. At a hearing on March 31, 2023, the trial court informed Bell that it had found him in summary contempt under Code § 18.2-456(A)(1) and (3). The court directed the clerk to open a "separate file" for summary contempt, and acting sua sponte, it entered five sealed exhibits in that file.[2] The exhibits included a two-page typed letter with the heading "Juror Information" and the typed name "Raymond Bell" at the bottom of the second page. The opening paragraph stated: "You have been sent this summary as you were possibly among the 57 citizens asked to assemble at the Roanoke County Courthouse for jury duty on March 20, 2023. Out of the group of those assembled, 13 were selected and seated for the case this [letter] . . . make[s] reference to."

The letter then thanked the jurors for their service and described the verdict in Bell's case as "accurate based on what was presented to" them at trial. The letter then stated: "This which follows is what you were not allowed to be told or presented with." It asserted that three eyewitnesses refused to testify and that police reports that would have impeached the testifying witnesses were excluded from evidence. Further, multiple audio or video files related to the offense "were lost before [the] defense could have known to save and/or request the files."

The letter further described the testimony of several trial witnesses and additional pieces of evidence that the trial court purportedly excluded at trial. The letter then stated: "Does all of this

---

[2] To the extent that this opinion mentions facts in the sealed exhibits, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed. *See Chenevert v. Commonwealth*, 72 Va. App. 47, 52 n.1 (2020).

suggest you were wrong in your verdict? NO." It closed by asserting: "The fact is that jurors should be entitled to ALL information. Under Virginia law, the prosecutor and the judge determine what a juror sees and hears. Defense [counsel] has no input to those decisions except to object or agree. Thank you again for your service."

The exhibits also contained several email chains between the trial court clerk, the Commonwealth's Attorney's office, and the Roanoke County Sheriff's Office, which the Clerk forwarded to the trial court. Bell was not copied on or privy to this email evidence until the summary contempt hearing. These emails suggest that multiple jury panel members contacted the court, the Commonwealth's Attorney, or the sheriff's office upon receiving the letter to register their concerns. The exhibits also included an unsigned, undated "Timeline" documenting the contacts from the jury panel members and the communications between officials in the trial court, the Commonwealth's Attorney's office, and the sheriff's office. According to the timeline, those contacts occurred between March 28 and 30, 2023, after the jury found Bell guilty of brandishing and the jury was discharged but before he was sentenced for the brandishing offense.

The trial court then told Bell that "Virginia diligently protects the [inviolability] and secrecy of jurors' deliberations" and that "[i]implicit in the" constitutional right to trial by an impartial jury is "a defendant's right to have the jury decide the case based only upon what occurs during the trial and on the judge's instructions as given in open court." The trial court concluded that the communications "reflected in the exhibits . . . were inappropriate and occurred before the underlying criminal conviction of brandishing [was] concluded and before the jury panel term of service had concluded." The court announced that it would empanel a jury to decide Bell's punishment for summary contempt.

Defense counsel stated that "[g]iven the circumstances," counsel had "some questions about some of [the] documents" in the exhibits, including whether the letter was dated. The trial court

responded that the documents had been "filed as exhibits" and, because the court was "not testifying," it was "not subject to cross-examination." When defense counsel asked if Bell would be "arraign[ed] on the contempt charge," the trial court stated that the hearing was "not a plenary proceeding" and the court had found Bell in contempt.

At the contempt sentencing hearing,[3] the parties and the trial court agreed that the maximum sentence the jury could fix was six months' incarceration. The Commonwealth argued to the sentencing jury that the assertions in the letter were "patently false" and "caused concern" for the recipients. It asserted that Bell sent the letter to "obstruct, . . . impede, [and] cast doubt onto the [justice] system that we use every day." It asked the jury to "send a message to" Bell about "how inappropriate this behavior was."

Defense counsel asked the jury to limit Bell's contempt punishment to a fine. Counsel acknowledged that while "[i]t was probably not a good idea to send this letter," the letter was not "mean," "vulgar," or "threatening." Counsel summarized the contents of the letter and urged the jury to use its common sense in fashioning an appropriate sanction.

The parties stipulated that "the 57 members of the jury panel wh[o] were the intended recipients of the letter sent by the defendant[] were still under their active term of jury duty when they received the letters." The panel's term "was set to expire March 31, 2023," and "although no further jury trials were heard between" March 20 and March 31, 2023, "the jury panel was subject to recall as needed until March 31, 2023."

The Commonwealth then called three members of that jury panel to testify: one potential juror who was not selected and two jurors who served on the jury for Bell's brandishing charge. It also played a video recording of a portion of one witness's testimony in the brandishing trial.

---

[3] Although the defense counsel who represented Bell in the brandishing case indicated at the March 31 hearing that he intended to move to withdraw, that counsel continued to represent Bell at the contempt sentencing hearing.

In closing argument on sentencing, the Commonwealth described Bell's actions in sending the letters as "malicious," "egregious," and "uncalled for." It asked the jury to impose "active incarceration." The defense again asked the jury to impose a fine, noting that Bell received a seven-month active sentence in the brandishing case.

The jury fixed Bell's contempt sentence at six months' incarceration. Before the trial court sentenced Bell, defense counsel explained that Bell "object[ed] [to] the fact that this is a summary contempt as opposed to impaneling a jury on guilt or innocence on the underlying issue." The trial court then imposed the jury's sentence.

Bell now appeals, arguing that the trial court lacked authority to hold him in summary contempt, because neither Code § 18.2-456(A)(1) nor (A)(3) applies to his alleged conduct. Bell acknowledges that he did not preserve these arguments in the trial court but asks this Court to address them under the ends of justice exception to Rule 5A:18.

ANALYSIS

"All courts in this Commonwealth have the power to impose penalties for contemptuous conduct" to "preserve the power of the court and to vindicate the court's dignity." *Gilman v. Commonwealth*, 275 Va. 222, 227 (2008). "The exercise of this power, however, 'is a delicate one[,] and care is needed to avoid arbitrary or oppressive conclusions.'" *Scialdone v. Commonwealth*, 279 Va. 422, 442 (2010) (quoting *Cooke v. United States*, 267 U.S. 517, 539 (1925)). The United States Supreme Court has characterized the contempt power as "uniquely . . . 'liable to abuse.'" *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (quoting *Bloom v. Illinois*, 391 U.S. 194, 202 (1968)). Thus, a court's power to punish for contempt is limited to "the least possible power adequate to the end proposed." *Scialdone*, 279 Va. at 442 (quoting *Harris v. United States*, 382 U.S. 162, 165 (1965)).

Contempt can be either civil or criminal. *Bagwell*, 512 U.S. at 826-27. "[C]ivil contempt sanctions" are "penalties designed to compel future compliance with a court order," and thus are "coercive and avoidable through obedience." *Id.* at 827. By contrast, "[c]riminal contempt is a crime in the ordinary sense," and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Id.* at 826 (first quoting *Bloom*, 391 U.S. at 201; and then quoting *Hicks v. Feiock*, 485 U.S. 624, 632 (1988)). Here, the trial court unquestionably found Bell in criminal contempt.

"[T]here are two distinct types of contempt, direct and indirect." *Scialdone*, 279 Va. at 442. A "direct contempt is one committed in the presence of the court," while indirect contempt "occur[s] outside the presence of the court." *Gilman*, 275 Va. at 227. Thus, in a direct contempt, "the judge is his own best witness of what occurred." *Scialdone*, 279 Va. at 444 (quoting *United States v. Marshall*, 451 F.2d 372, 374 (9th Cir. 1971)).

It is well-established that "direct contempt may be subject to summary adjudication." *Gilman*, 275 Va. at 227. "In a summary adjudication, no evidence or further proof is required because the court has observed the offense." *Id.* at 227-28; *see Bagwell*, 512 U.S. at 832 ("[T]he contempt's occurrence before the court reduces the need for extensive factfinding and the likelihood of an erroneous deprivation."). Moreover, summary adjudication of direct contempt is justified by a court's need "to maintain order in the courtroom and the integrity of the trial process in the face of an 'actual obstruction of justice.'" *Bagwell*, 512 U.S. at 832 (quoting *Codispoti v. Pennsylvania*, 418 U.S. 506, 513 (1974)). Accordingly, in cases where the trial court directly observed the contemptuous behavior, summary adjudication "provide[s] due process of law." *Gilman*, 275 Va. at 228.

"Summary punishment always, and rightfully, is regarded with disfavor and, if imposed in passion or pettiness, brings discredit to a court as certainly as the conduct it penalizes." *Scialdone*,

279 Va. at 443 (quoting *Sacher v. United States*, 343 U.S. 1, 8 (1952)). Thus, the decisions of the United States Supreme Court and the Supreme Court of Virginia limit a court's power to summarily punish contempt to instances of direct contempt. *See id.* at 442-44 (citing *Sacher*, 343 U.S. at 8; *In re Oliver*, 333 U.S. 257, 275-76 (1948); *Cooke*, 267 U.S. at 535). "[U]nless the contempt is 'committed in open court,'" such that the judge has personal knowledge of the essential elements, "due process 'requires that the accused . . . be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation.'"[4] *Id.* at 444 (quoting *Cooke*, 267 U.S. at 537). Such process is also called a plenary—rather than summary—contempt proceeding. *Singleton v. Commonwealth*, 278 Va. 542, 546 (2009). Simply put, a court may not, consistent with due process, summarily adjudicate or punish an indirect contempt. *Scialdone*, 279 Va. at 443-44; *see Cooke*, 267 U.S. at 536 ("[T]he assumption that the court saw everything that went on in open court" is "required to justify the exception" to "the usual and ordinarily indispensable hearing before judgment . . . .").

Code § 18.2-456 limits the conduct that Virginia courts may summarily punish for contempt. *See Parham v. Commonwealth*, 60 Va. App. 450, 459 (2012). Such conduct includes: "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice," Code § 18.2-456(A)(1), and "[v]ile, contemptuous, or insulting language addressed to or published of a judge for or in respect of any act or proceeding had, or to be had, in such court, or like language used in his presence and intended for his hearing for or in respect of such act or proceeding," Code § 18.2-456(A)(3). In finding Bell in summary contempt, the trial

---

[4] The Supreme Court of Virginia has held that criminal contempt proceedings are not "criminal prosecutions" and thus are governed by the "protections of fairness guaranteed by the" Due Process Clause of the Fourteenth Amendment rather than the guarantees in the Sixth Amendment. *See Gilman*, 275 Va. at 228.

court stated that his alleged conduct in sending the letter to the members of the jury panel satisfied both subsections.

Bell acknowledges that his trial counsel did not properly object to the trial court's use of summary contempt.[5]  Rule 5A:18 stipulates that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  The exception noted in Rule 5A:18 is known as the "ends of justice" exception, which allows a party on appeal to overcome the contemporaneous objection requirement.  *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015) ("The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials."); *see also Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (noting that procedural-default rules protect the processes of both trial courts and appellate courts).

Bell asks this Court to apply the ends of justice exception to Rule 5A:18.  Whether an appellant is entitled to invoke that exception is a question of law that this Court reviews de novo.  *Commonwealth v. Bass*, 292 Va. 19, 27 (2016).  Because "[t]he 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly,'" an inquiry preceding its application involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice."  *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)); *Bass*, 292 Va. at 27 (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)); *see also Rowe v. Commonwealth*, 277 Va. 495, 503 (2009) (authorizing application of

---

[5] At sentencing on the contempt charge, defense counsel explained that Bell "object[ed] [to] the fact that this is a summary contempt as opposed to impaneling a jury on guilt or innocence."  Counsel also stated, however, that "[w]e understand the court's ruling on that."

the exception "to avoid a grave injustice or the denial of essential rights" (quoting *Charles v. Commonwealth*, 270 Va. 14, 17 (2005)).

As to the first inquiry, we must address whether the trial court had the authority, consistent with due process, to adjudicate Bell's alleged conduct under the requirements of Code § 18.2-456(A)(1) and (3). We conclude that the trial court did not have the authority.

Bell's alleged contemptuous conduct did not occur "in" or "so near" the trial court's presence as to meet the statutory and constitutional requirements for summary contempt. The letter was not sent to the trial court, and the court did not have personal knowledge that Bell sent letters to members of the jury panel. The exhibits, entered sua sponte by the trial court at the March 31, 2023 hearing, confirm that the judge learned of the letters only *after* several recipients alerted the trial court clerk, the Commonwealth's Attorney, or the sheriff's office. Likewise, the fact that the trial court needed to introduce its own exhibits to establish the factual basis for the contempt should have immediately alerted it and the parties that summary adjudication was prohibited.

As explained in *Scialdone*, summary adjudication of contempt is only proper in instances of direct contempt, when the contemptuous conduct is committed in the presence of the court such that "the judge *is his own best witness* of what occurred." 279 Va. at 433 n.3, 442-44 (emphasis added) (quoting *Marshall*, 451 F.2d at 374) (specifically analyzing the application of present Code § 18.2-456(A)(3) and (4) but citing the statute in its entirety when noting the constitutional limits on direct contempt). "If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires . . . that the accused be accorded notice and a fair hearing . . . ." *Id.* at 443-44 (quoting *Oliver*, 333 U.S. at 275-76).

Here, clearly the trial court did not personally observe the essential elements of the misbehavior. As a result, it lacked authority to hold Bell in contempt without providing him fair

notice and a hearing, including the opportunity to present a defense or explanation. *See id.*[6] Judges are not prosecutors. *See United States v. Neal*, 101 F.3d 993, 997 (4th Cir. 1996) ("It is axiomatic that the prosecution of crimes is not a proper exercise of the judicial function."). "[I]n cases involving indirect contempt, the judge cannot both present the [g]overnment's case and decide the factual and legal issues." *Id.* at 998 n.4; *cf. Offutt v. United States*, 348 U.S. 11, 17 (1954) ("The question with which we are concerned is not the reprehensibility of [Bell's] conduct and the consequences which he should suffer. Our concern is with the fair administration of justice.").

Moreover, the record in this case affirmatively establishes that the trial court's decision to hold Bell in summary contempt constituted a manifest injustice. "[A] defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Melick*, 69 Va. App. at 146 (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). Such an affirmative showing is a requirement higher even than an argument that is superior on the merits, for if success on the merits were enough, "procedural default 'would

_____

[6] We need not address, under the language in Code § 18.2-456(A)(1), precisely where the line falls between misbehavior "*so near []to [the court]* as to obstruct or interrupt the administration of justice" (a species of direct contempt punishable summarily) and misbehavior constituting indirect contempt (for which summary proceedings are not permitted). *See* Code § 18.2-456(A)(1) (emphasis added). We hold only that Bell's behavior here—sending a letter to the venire panel members, after their role in his criminal trial concluded but before their full term of jury service was complete—did not occur near *enough* to the court to qualify for summary resolution. *Cf. Scialdone*, 279 Va. at 445 (holding summary contempt proceedings violated constitutional due process principles because, although the defendant offered an altered document into evidence "in the . . . court's presence, [its] conclusion that the document was altered was the result of extensive questioning and evidence-gathering"). *See generally In re Oliver*, 333 U.S. at 275 ("The narrow exception to the[] due process requirements includes only charges of misconduct, in open court, . . . actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public."), *quoted with approval in Scialdone*, 279 Va. at 443; *cf. generally United States v. Wilson*, 421 U.S. 309, 315 n.6 (1975) (interpreting almost identical "so near thereto" language in the federal contempt statute, 18 U.S.C. § 401, as "apply[ing] a *geographical* limitation" on contempt power, permitting summary punishment not only of contempt "in the face of the court" and contempt "'actually interrupting the court in the conduct of its business'" but also of "'misbehavior in the *vicinity* of the court *disrupting to quiet and order*'" (emphases added) (quoting *Nye v. United States*, 313 U.S. 33, 52 (1941))).

never apply, except when it does not matter.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)). When demonstrating that the "failure to apply the ends of justice provision would result in a grave injustice," the "burden . . . is a heavy one, and it rests with the appellant." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)).

The record in this case affirmatively establishes that the trial court's decision to hold Bell in summary contempt constituted a manifest injustice. The Attorney General contends that the "ends of justice" exception is inapposite because Code § 18.2-456 is a procedural statute and there is no exception to Rule 5A:18 for procedural errors. Yet the Commonwealth offers no relevant authority to support this position.[7] We hold that finding Bell in summary contempt, sending the sentencing decision to a jury, and imposing the jury's sentence of six months' incarceration in derogation of this basic due process guarantee constitutes a miscarriage of justice to which the ends of justice exception provided in Rule 5A:18 applies.

## CONCLUSION

Accordingly, we apply the ends of justice exception to Rule 5A:18 and therefore reverse the trial court's order summarily holding Bell in contempt and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[7] The Commonwealth cites *Connelly v. Commonwealth*, 14 Va. App. 888, 891 (1992), in support of its position. But that case stands only for the proposition that Rule 5A:18 bars claims not raised in the trial court *if* neither of the rule's exceptions applies. A due process claim is treated no differently. It may be raised and considered for the first time on appeal under the rule's ends-of-justice exception on the same terms as any other type of claim—if such consideration is "necessary to [satisfy] the ends of justice" under the requisite standard. *See id.* (alteration in original) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 131 (1989)). In other words, procedural due process claims are treated like any other claims with regard to whether Rule 5A:18 and its exceptions apply.